## BYRON E. CRONKHITE

### v.

## AMANDA B. STRAIN et al.

*Opinion filed June 23, 1904.*

1. DEEDS—*when failure to reserve interest does not divest it.* If a deed specifically declares what interests of the grantor are conveyed, the fact that no other interests are mentioned does not operate to divest them.

2. PARTITION—*it is presumed that the proper course was pursued in assigning dower.* In the absence of anything to the contrary appearing in the partition proceeding, particularly in the decree or the report of the commissioners, it will be presumed the proper course was pursued in assigning dower.

APPEAL from the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

SALMANS & BROWN, for appellant.

WILLIAM L. CUNDIFF, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is a proceeding to partition 640 acres of land in Vermilion county, formerly owned by Thomas Johnson, who died in the year 1853 owning about 2251 acres in Vermilion county, and leaving surviving him a widow, Deborah Johnson, and eight children, namely, Eliza A. Johnson, James K. Johnson, Mary E. Schobey, Martha M. Johnson, Susannah Johnson, Carla A. Johnson, Elizabeth Stafford and Amanda B. Strain. On April 14, 1854, Eliza died, and on February 22, 1863, James K. died intestate, leaving their mother and their six remaining sisters as their only heirs-at-law. On September 18, 1862, suit was commenced in the circuit court of Vermilion county to partition and assign dower in this 2251 acres of land. On March 23, 1863, three of said children,

to-wit, Elizabeth, Susannah and Mary E., all of them married, together with their husbands, deeded all their interests in the share of their deceased brother, James K., in the lands of his deceased father, to the said widow, Deborah, their mother. On April 4, 1863, Mary E., having married one Schobey, died intestate, leaving two sons, her only heirs.

The commissioners appointed to make partition of the estate of Thomas Johnson filed their report on May 12, 1865, reporting, among other things, that they had set off and assigned to Deborah Johnson certain lands (describing them) as her dower. The decree of partition decreed that Deborah Johnson is entitled, as dower, to one-third of the land in question, and that Elizabeth Stafford, Martha Johnson, Carla A. Johnson and Amanda B. Johnson are each entitled to one-eighth of the lands in fee by descent from their father, (Susannah Johnson having sold her one-eighth to John Ross,) and that William Schobey and James Schobey are each entitled to one-sixteenth from their mother, Mary E. Schobey, all of the above interests being subject to the dower of Deborah Johnson; that of the shares of Eliza A. and James K. Johnson in their father's estate, making together one-fourth, said Deborah Johnson is entitled to one-fourth by descent from her said children and to three-sixths of one-eighth in fee by purchase from said Mary E. Schobey, Elizabeth Stafford and Susannah Johnson, being their shares in their brother's (James K. Johnson's) interest in his father's estate; that Elizabeth Stafford is entitled to one-sixth of one-eighth by descent from her said sister Eliza, and the said Susannah Johnson is entitled in fee to one-sixth of one-eighth from her said sister Eliza, and that William Schobey and James Schobey are each entitled in fee to one-twelfth of one-eighth by descent from their aunt, Eliza.

On the 2d day of April, 1866, Elizabeth Stafford and husband, Susanna Johnson and husband and Amanda B.

Strain and husband sold to Byron E. Cronkhite, by warranty deed, the undivided half of the dower lands set off and assigned to Deborah Johnson. On June 21, 1866, Martha M., the fourth one of said children, died intestate, never having married and leaving no issue, but leaving four sisters, to-wit, Susannah, Carla A., Elizabeth and Amanda, and her mother, the said widow, Deborah, and the two sons of Mary E., her only heirs. On February 4, 1869, the fifth one of said children, to-wit, Susannah, died testate, devising her interest to her husband. On April 18, 1870, the sixth one of said children, to-wit, Carla A., died testate, devising her interest to her mother, Deborah.

On May 10, 1872, said Deborah, the widow, conveyed by deed to the complainant, Byron E. Cronkhite, all her interest derived by inheritance and by will from her daughters Martha and Carla, being the last two of her daughters dying next preceding the making of said deed, the language used in the description in said deed being: "All her right, title and undivided interest in and to the following described land, to-wit, [describing the land,] which she, the said Deborah Johnson, inherited as mother and heir of Martha M. Johnson, deceased, and by will of Carla A. Johnson, deceased. And it is further understood between the above named parties hereto that this sale shall in no way, shape or manner interfere with a former sale made by the said Deborah Johnson to the said Byron E. Cronkhite of her dower interest in the above described land, and as her life estate in the same, amounting to 153 acres, more or less."

On September 1, 1882, Elizabeth, the seventh of said children, died intestate, leaving a child her only heir. On September 1, 1891, said Deborah was married to one Bandy. On September 23, 1901, said widow, being then Deborah Bandy, died testate, devising all her interest in the lands in Vermilion county to Amanda B. Strain for life with remainder to Carrie Bell Strain in fee. Byron

E. Cronkhite, the complainant, has by divers conveyances from the heirs, their successors and assigns, acquired all the interests in the lands in question, except the interests claimed by defendants Amanda B. and Carrie Bell Strain in and by their said answers and awarded to them by the decree sought to be reversed.

March 30, 1903, complainant filed his amended bill to partition. The cause being heard, the court awarded the decree here sought to be reversed. The decree awarded to Amanda B. Strain 24/2016 parts in fee simple and a life estate in 11/96 parts, with remainder thereof in fee simple to Carrie Bell Strain. Complainant, by his bill, claimed to own 41/42 parts in fee and that the remaining 1/42 part was owned by Amanda B. Strain, as heir of her sister Martha.

The defendant Amanda B. Strain admitted by her answer that she was entitled to said 1/42 part as such heir; denied that complainant owned 41/42 parts; alleged that in addition to said 1/42 part she was entitled to a one-eighth part for life with remainder to her daughter, Carrie Bell Strain, in fee simple, by devise from her said mother, Deborah Bandy, (formerly Deborah Johnson,) who owned the same at her death. Defendant Carrie Bell Strain by her answer makes substantially the same claim as Amanda, but claiming for herself only 11/96 parts in fee, subject to said Amanda's life estate.

The defendants claim to have derived their respective interests in the manner following:

*First*—It is claimed by defendants, and admitted by complainant, that Deborah Bandy, (formerly Deborah Johnson,) the widow of Thomas Johnson, deceased, died September 23, 1901, and by her will devised all her interest in lands in Vermilion county to Amanda B. Strain for life, with remainder in fee simple to Carrie Bell Strain, one of the defendants; that at the time of her death Deborah Bandy was the owner in fee of 11/96 parts of the land in question, which she derived in the manner follow-

ing: That her daughter Eliza A. died intestate on April 14, 1854, seized of an undivided one-eighth interest (subject to the dower of her mother, Deborah,) in all the lands of her father, Thomas Johnson, then deceased, leaving as her only heirs her mother, said Deborah, and one brother and six sisters; that said Deborah, being the only surviving parent, was entitled to two shares, which, together with one brother and six sisters of the deceased, made nine shares; that thereby said Deborah became seized of a two-ninths part of the one-eighth part of Eliza A. in the lands of her father, which amounted to 2/72 parts of the whole of the lands in fee simple; that her son, James K., died intestate on February 22, 1863, leaving as his only heirs his said mother, Deborah, and his six sisters, and that he was seized at his death of a one-eighth interest in all the lands of his father, Thomas Johnson, subject to the dower of his mother therein, and also a 1/72 part thereof as heir of his deceased sister, Eliza, making his entire interest one-eighth plus 1/72, or 10/72; that of this, Deborah, as his mother, took two parts, which, with the six parts of his sisters, in all eight, gave her two-eighths of his 10/72 interest in said lands, or 10/288 parts thereof; that this, added to the interest she inherited from Eliza A., made her interest 2/72 plus 10/288, or one-sixteenth part; that by purchase from three of her daughters, to-wit, Elizabeth, Susannah and Mary E., said Deborah acquired by deed of March 23, 1863, all their interests in the interest of James K. in the lands of his father; that this interest of James K., being, as above stated, 10/72 parts, and there being eight shares, each of the above sisters joining in said deed to their mother, Deborah, she received thereby a three-eighths part of his 10/72, or 15/288; that to this is to be added the part derived by inheritance, as aforesaid, viz., one-sixteenth plus 15/288, which equals 11/96, the total interest of Deborah, and which the defendants claim was never conveyed by said Deborah to any person, but passed to Amanda B. Strain for life with

remainder in fee to Carrie Bell Strain by the terms of the will of said Deborah Bandy, formerly Deborah Johnson.

*Second*—Defendant Amanda B. Strain claims 24/2016 parts in fee simple by inheritance from her sister Martha M., who was also a daughter of Thomas Johnson, and who died intestate June 21, 1866, leaving her mother, said Deborah, and defendant Amanda B., Carla A., Elizabeth and two children of Mary E., her sister, her only heirs, making in all seven parts; that Martha M. had inherited from her father one-eighth, from her sister Eliza A. one-ninth of her one-eighth part, or 1/72, and from her brother, James K., one-eighth of his 10/72 parts, or 5/288 parts, making a total of 45/288 parts; that of this, said Amanda B., one of the defendants, took one-seventh by inheritance, making 5/224 parts; that by warranty deed of April 2, 1866, defendant Amanda B. and her two sisters, Elizabeth and Susannah, attempted to convey the undivided one-half of the land in question to the complainant, Cronkhite; that at this time Amanda, like Martha, aforesaid, inherited 45/288 parts of all the lands, Susannah and Elizabeth both having conveyed, as aforesaid, their interests in the part of James K. to the said Deborah, their mother, and had then only their original one-eighth, each, from their father, and their 1/72 each from their sister Eliza, making their total interest 40/288 each, so that their combined conveyance by said deed amounted to but 125/288, whereas they had attempted to convey one-half, or 144/288; that being jointly or severally liable for breach of the covenant of seizin, each having afterward acquired, by inheritance from their sister Martha M., a sufficient amount to make up their respective deficits, such parts thereof inured, in equitable proportion, to the grantee of their deed, Byron E. Cronkhite, the complainant; that the deficit was 19/288; that each, to have conveyed her one-third of 144/288, should have had 48/288; that Amanda B., having 45/288, was short 3/288; that Susannah and Elizabeth, each having

40/288, were each short of their respective one-third to the amount of 8/288; that this, taken from their respective shares of Martha's land by inurement, has made good the deficit to Cronkhite, who has since acquired all the remaining shares of the feeholders, except as aforesaid, and has operated to reduce the interest of Amanda B. Strain derived from Martha M.'s lands from 5/224 parts aforesaid by deducting her deficit of 3/288 in her deed, which now leaves her seized in fee simple from Martha M.'s share of said lands to 24/2016 parts; that said Amanda B. Strain, as owner of the life estate of 11/96 parts and in fee of 24/2016 parts, is entitled to the rents of said shares since the death of said Deborah Bandy at the rate of $4.375 per acre per annum.

The decree sought to be reversed does not grant the full one-eighth for life to Amanda B. with fee to Carrie Bell Strain, as prayed, for the patent reason that the ancestor, Deborah, could not have received by the deed of her three daughters a three-sixths part of the one-eighth part of James K., when they, in fact, owned but a three-eighths part of it, which reduced her interest from one-eighth, or 12/96, as claimed, to 11/96. · The decree refuses the claim of Amanda B. for 1/42, alleged by the complainant, and for her full 5/244 parts, which was her part, in fact, of Martha's share in fee, and charged it with her proportionate share of the deficit in the deed of April 2, 1866.

The principal points on which complainant contends that this decree is wrong may be summed up in this: that in the original decree assigning the widow's dower and partitioning the remaining lands among the feeholders, all the interests of Deborah Johnson, as an heir and purchaser in fee, both in the lands set off to her as dower in her husband's land and in the remaining lands, were set off to her out of the remaining lands alone, and in the further contention that the deed from Elizabeth, Susannah and Amanda, purporting to convey one-half, and the deed

from Deborah, and the other deeds under which he claims, completely vested him with the entire dower lands, with the exception of 1/42 conceded to Amanda B. Strain.

As to the contention that the interest in fee of Deborah Johnson was set off exclusively out of other lands than the 640 acres of land that was set off to her for dower, it may first be said that there is no such order in the decree directing the assigning of dower and the partition of the lands, nor are there such facts set out in the report of the commissioners as will warrant the conclusion contended for. The force and legal effect of the decree, as we understand it, was to direct the commissioners to assign dower to Deborah Johnson as widow of the ancestor and owner of the land, and to make partition of the residue or remaining lands among the respective parties owning the fee thereof, according to their respective interests as found in the decree. That was the natural and logical order of things, and in the absence of anything to the contrary appearing in the proceedings, and particularly in the decree or report of the commissioners, the court below, and this court, must presume that such was the course pursued. When the 640 acres were set off to Deborah Johnson, the fee to that land was held by the same persons and in the same proportions as the fee to the other lands that were partitioned among the respective owners was held. Deborah Johnson's interest was not that of a fee interest in that part of the lands outside of the portion that should be assigned to her for dower, any more than was the interest of any child of the decedent who took his land as heir. By the death of two of her children and by purchase she had acquired an interest in the fee of all the lands of which her husband died seized, and such was the status of her right at the time of the partition, and it is as reasonable to say that when the commissioners, by order of the court, set off to Amanda the lands she held in fee that was the end of her claim to the fee of all

the lands, as it is to say that by assigning to Deborah 640 acres for her dower it must be presumed that the lands that were set off to her in fee, outside of dower, were in lieu of and in full of all her fee interest in all the lands, including the dower lands. Such construction seems to us to be unsound, nor is it according to the usual practice in such cases, and is not supported by the findings of the decree or the report of the commissioners. It is unquestionably true that after the partition proceedings were had, Deborah Johnson and some of her children conducted themselves and made conveyances apparently upon the theory that when the partition was made the fee of the 640 acres that was set off to Deborah for her dower was vested in the remaining children and their descendants, but there is no conduct of theirs that is sufficient to divest the title of Deborah to her interest in the land. It is claimed that the deed that she made to Cronkhite showed that she had or claimed no other interest than the interest that she had derived from her daughters Martha and Carla, both of whom had died after the partition; but the deed to Cronkhite from Deborah specifically mentions what interest in the land is conveyed, and points out that it is the interest that Deborah received from her daughters Martha and Carla, and the fact that she did not say in that deed that she had other interests or claimed other interests which she had previously inherited from or through her daughter Eliza and her son, James K., and through her purchases from three of her daughters of their interests which they had inherited from James K., cannot be held sufficient to have divested all those interests as they related to this land in question.

Referring next to the insistence of counsel that the grantors of the deeds of April 2, 1866, and of May 10, 1872, owned the interests that they attempted to convey, it will be well to look to the fountain from which such title originated. It had its origin in the state of facts

existing at his death and arising between the death of Thomas Johnson and the report of the commissioners appointed to assign dower to the widow and partition the lands among the children, and on which the decree of 1863 was predicated. While such decree is evidence in this case, it has no binding force as to the facts therein incorrectly stated and incompatible with each other. That said decree is incoherent in some particulars is obvious. When all the fractional parts thereof, as found belonging to the respective parties, are added together, there is a unit of exaggerated parts, as clearly appears from the following tabulated statement showing shares detailed by the decree, actual shares and amount of exaggeration:

| Shares as Shown by Decree. | Actual Shares. | Amount of Exaggeration. |
|---|---|---|
| Elizabeth ......1/8 plus 1/6 of 1/8, or 14/96 | 40/288 | 2/288 |
| Martha........1/8 plus 1/6 of 1/4, or 16/96 | 45/288 | 3/288 |
| Carla..........1/8 plus 1/6 of 1/4, or 16/96 | 45/288 | 3/288 |
| Amanda........1/8 plus 1/6 of 1/4, or 16/96 | 45/288 | 3/288 |
| Jno. Ross ........... ..........1/8 or 12/96 | 36/288 | |
| Wm. Schobey..1/16 plus 1/12 of 1/8.. 7/96 | 20/288 | 1/288 |
| Jas. Schobey...1/16 plus 1/12 of 1/8.. 7/96 | 20/288 | 1/288 |
| Deborah................1/4 of 1/4.. 6/96 | 18/288 | |
| Deborah................3/6 of 1/8.. 6/96 | 15/288 | 3/288 |
| Susannah..............1/6 of 1/8.. 2/96 | 4/288 | 2/288 |
| Total.......................102/96 | 288/288 | 18/288 |

It will be observed from the above schedule that the first column is taken from the decree and that the second is made up from the facts related in the decree; that there were originally eight shares; that two heirs died intestate, the first leaving her mother, six sisters and a brother, and the second his mother and six sisters, their heirs, etc., except the dates of the respective deaths, and the facts subsequent to said decree which are taken from extrinsic evidence, shown both by the abstract and statement of complainant's counsel. It will also be observed that the number of parts declared to rest in the heirs in fee amount in total to 102/96 parts, and that when

resort is had to the actual state of facts on which the decree was predicated a perfect unit is produced and the points of exaggeration disclosed. Thus when Eliza died, her mother, one brother and six sisters made nine parts. When James died there were eight, and they took by eighths,—not sixths, as the decree states, for such division would exclude the parent's share.

The trial court found that to give Deborah, the defendants' testator, three-sixths of one-eighth because she had purchased the interests of three of the six sisters of James K., which he inherited of his father, which the decree described as being three-sixths, was error. It then resorted to the facts, and found that if a man die leaving no heirs but his six sisters and a mother, there were eight shares, two of which went to the mother and one each to his sisters, and that the deed of three of them would convey three-eighths instead of three-sixths of his share, which at that time was one-eighth plus the one-seventh part he inherited from Eliza, or a total of $10/72$, three-eighths of which was $15/288$, added to the one-fourth of one-fourth accredited by the decree and in accord with the facts, makes $11/96$ instead of $12/96$, and the interests of defendants' testator was thus pared down to the proper size. This paring process was again resorted to at the expense of the appellee Amanda B., when it was found that she and her two sisters, Elizabeth and Susannah, by their deed of April 2, 1866, had attempted to convey to the complainant $144/288$, or one-half of the land in question, when they in fact had but $125/288$, and the court determined that she must make good the deficit of her covenant of seizin, and took from her subsequent inheritance $3/288$ and added it to the share of the complainant.

After careful consideration of the decree rendered by the court below we find no error therein, and the same will be affirmed.                *Decree affirmed.*