EDWARD W. MORRISON, Appellee, *vs.* ARCHIE J. BEERS *et al.* Appellants.

*Opinion filed October 22, 1927.*

1. DEEDS—*deed of a spendthrift is void after adjudication although no conservator is appointed—reimbursement.* A deed of a spendthrift is void when made after the finding of the jury and the adjudication that he is a spendthrift even though no conservator was ever appointed for him, and parties claiming to have paid money for such deed are not entitled to reimbursement as a condition precedent to setting aside the deed in a proceeding by the spendthrift to register title after a judgment finding that he is no longer a spendthrift.

2. EVIDENCE—*when testimony of witness may be disregarded.* While the testimony of a witness who is uncontradicted and unimpeached by other witnesses or by circumstances cannot be disregarded, yet courts are not required to believe the testimony of a witness merely because it has been sworn to, and may disregard testimony which is discredited by the circumstances as well as by the statements of the witness himself.

3. REGISTRATION OF TITLE—*what is sufficient proof as to occupation of premises.* An applicant to register title must prove occupation of the premises as alleged in the application, and the testimony of witnesses who visited the premises shortly before and after the proceedings were instituted that the persons named as defendants to the application were occupying the premises as tenants is sufficient.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

HARRY H. FELGAR, for appellants.

Lewis F. Jacobson, Roy C. Merrick, Cameron Lat-
ter, and Sidney C. Nierman, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The circuit court of Cook county having entered a de-
cree for the registration of title in fee to certain real estate
in Cook county in Edward W. Morrison upon his applica-
tion, Archie J. Beers and Louise N. Beers, who were de-
fendants to the application and cross-petitioners for the
registration of the title in fee in them, have appealed.

The evidence shows that the appellee was the owner of
the premises in fee on March 8, 1919, and on that date
executed a quit-claim deed of them to the appellants for an
expressed consideration of valuable services and $2000. On
January 11, 1917, a verdict of a jury in the probate court
of Cook county was rendered finding the appellee to be a
spendthrift, upon which he was adjudicated a spendthrift,
and on appeal from this judgment a like adjudication was
made by the circuit court on September 14, 1918. No let-
ters of conservatorship were issued, and on October 21,
1921, the probate court entered a judgment finding the ap-
pellee no longer a spendthrift. The court, in affirming the
report of the examiner to whom the cause was referred,
found that the appellants occupied a part of the premises
under claim of title by virtue of the quit-claim deed to
them; that before the execution of the deed the appellee
had on January 11, 1917, been adjudicated a spendthrift
by the probate court and by the circuit court on appeal on
September 14, 1918; that the deed was void and the ap-
pellants were not entitled to reimbursement for any money
claimed to have been paid to or for Morrison or on his be-
half as a consideration for the deed; that they failed to
show any payment for or on behalf of Morrison, or in
consideration for the deed, to entitle them to reimburse-
ment; that the deed was a cloud on the title of the appel-
lee, and that the cross-application of the appellants ought

to be dismissed for want of equity; that Morrison was duly adjudicated no longer a spendthrift on October 21, 1921; that the equities were with the appellee and that he was entitled to the relief prayed for. The decree set aside the deed to the appellants as a cloud on the title of the appellee and directed the registration of the title to the premises in Morrison.

The appellants have made twenty-four assignments of error, which, in substance, resolve themselves into two: that the decree is contrary to the evidence, and that the court erred in decreeing the deed to the appellants was void and setting it aside without reimbursement to them.

Section 14 of the act to revise the law in relation to idiots, lunatics, drunkards and spendthrifts (chapter 86 of the Revised Statutes) provides that every note, bill, bond or other contract by an idiot, lunatic, distracted person or spendthrift, made after the finding of the jury, shall be void as against the idiot, lunatic, distracted person, drunkard or spendthrift and his estate.

The appellants contend that the adjudication that the appellee was a spendthrift is of no effect, for the reason that no conservator of his estate was appointed. This is immaterial. The statute does not make the invalidity of the contract of the idiot, lunatic, distracted person, drunkard or spendthrift dependent upon the appointment of a conservator of his estate but does make such invalidity dependent upon the finding of the jury, and all contracts made after such finding are declared to be void. The deed of March 8, 1919, was void, and the appellants were not entitled to the re-payment of money expended by them for the benefit of the appellee as a condition precedent to setting aside the deed. *Ure* v. *Ure,* 223 Ill. 454.

The appellants in their cross-application claim to be the owners in fee simple and the relief sought was the registration of the title in them. On the hearing of evidence before the examiner Archie Beers testified to his connection

with the appellee as an employee from the year 1886; that from August, 1916, when proceedings in bankruptcy were begun against the appellee and his property was taken under the control of a receiver, to November, 1919, the appellee was without means. Beers testified that during this time he was paid no part of his salary, which was $70 a month, but he advanced to the appellee, as his needs required, for his support various sums of money, amounting to about $3000. The payments so testified to are claimed to have been the consideration for the deed to the appellants. Beers produced three envelopes upon which he had written numerous items, which he testified were made at the time the payments were made to Morrison during this three-year period. The master in his report stated that from the demeanor and attitude of Beers he was unable to attach any weight to his testimony and that the payments were not made as the witness testified. The original papers on which these entries appear are not before us. He says he was employed in 1886 at $40 a month, that his wages were increased to $50 a month, and his total income in 1898 was about $100 a month, his salary being supplemented by earnings of his wife and their three boys, the oldest of whom was then about twelve years of age. He received about $500 from his father's estate, and about 1898, when the Dime Bank failed, he had $1500 on deposit there and other money hidden in his home. After the failure of the Dime Bank he rented a safety deposit box and afterwards kept his money in such a box. He usually had from $5000 to $8000. From August, 1916, Morrison promised to pay him $70 a month. During the bankruptcy proceedings Beers was followed by a detective because the people prosecuting that proceeding had learned he was supplying Morrison with money, and at Morrison's suggestion he rented other boxes at different times under assumed names. Every time Morrison wanted money Beers went to a box and got it. Morrison gave him three notes at differ-

ent times to evidence his indebtedness—one for $300 and each of the others for $1000. These notes, with other papers, he gave to Max M. Grossman, the attorney who represented the appellants at the beginning of these proceedings. Beers testified that Grossman had lost or mislaid the papers and they could not be found. Grossman did not testify.

The testimony of the witness was unreasonable and improbable. He is an interested witness. The appellee was eighty-nine years old at the time of taking the evidence before the examiner, was suffering from a stroke of apoplexy, and his physical and mental condition was such as to make his appearance as a witness to rebut Beers' testimony impracticable. While the testimony of a witness who is uncontradicted and unimpeached by other witnesses or by circumstances cannot be disregarded, there may be such inherent improbability in his testimony that the court may refuse to credit it even in the absence of conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony and there may be so many omissions or discrepancies in his testimony as to discredit him. (*Stephens* v. *Hoffman,* 275 Ill. 497.) Courts are not required to believe an unreasonable story, even though it is not contradicted, merely because it has been sworn to by a witness on the trial of a case. (*People* v. *LeMorte,* 289 Ill. 11.) Beers' testimony, unreasonable in itself, becomes more unsatisfactory by reason of the failure of the appellants to introduce corroborative evidence, which might have been easily produced if his statements were true. His wife, according to his testimony, who was one of the grantees in the deed, was a party to this proceeding to set it aside and is one of the appellants, knew of his transaction with the appellee and furnished money for the first of the loans to the appellee. Her testimony might have furnished material corroboration to her husband, but she did not appear as a witness. He could have produced

his two sons who were living with him at the time his testimony was taken and whose contributions enabled him to make loans to the appellee. They did not testify and there is no explanation of their absence. Grossman, to whom the supposed notes were delivered and from whose custody Beers testified they were lost, was not produced to show the loss.

The examination and cross-examination of Beers before the examiner occupies more than five-sixths of the twenty-nine pages of the abstract devoted to the evidence in this case. It is full of discrepancies, evasions, shifts and equivocations. To set these out in detail would serve only to prolong the opinion to no good purpose. They show that confidence cannot be placed in the statements of the witness, and that the statement of the master that he was unable to attach any credibility to his testimony was justified. The claim which the appellants seek to enforce by their cross-application to have the title registered in their names was an effort to effect a change in the title contrary to what the written title shows, by a resort to parol evidence, and if it were maintainable it would be necessary that the facts entitling the appellants to the relief should be clearly and definitely established by evidence free from suspicion. The evidence offered by the appellants in support of their contention does not reach that degree of certainty, and the finding of the court that it was insufficient to justify the granting of the relief was in accordance with the weight of the evidence.

The objection is made by the appellants that the evidence is insufficient to show the parties were in possession at the time the application was filed. The suit was begun on May 24, 1922. Cameron Latter, the appellee's attorney, visited the premises on Saturday prior to the commencement of the suit and found there in possession, as tenants, the persons who were made defendants to the application. Another witness in the early part of June, 1922, went to the

premises to collect the rent and found the persons named in the application occupying the premises as tenants. Proof of the occupation of the premises at the time of the application must be made, and proof that the premises were occupied within a reasonable time both before and after the application is sufficient for that purpose. *Foulkes* v. *Glos,* 272 Ill. 364; *Skinner* v. *Glos,* 274 id. 58.

The decree is affirmed.