Raymond Graham, Appellee, v. Emery Lounsbury, Appellee. Carol MacBeth, Intervenor and Ray Weber, Garnishee.

Gen. No. 10,388.

Heard in this court at the February term, 1950. Opinion filed May 16, 1950. Rehearing denied June 26, 1950. Released for publication June 26, 1950.

FRANKLIN J. STRANSKY, of Chicago, and BESSE & BESSE, of Sterling, for appellant.

CARL E. SHELDON and ALEXANDER L. HAGLUND, both of Sterling, for appellee.

Mr. Justice Dove delivered the opinion of the court.

On October 18, 1948, Raymond Graham filed his verified complaint in the circuit court of Whiteside county, charging that the defendant, Emery Lounsbury unlawfully took certain personal property of the plaintiff, consisting principally of a billfold containing $2,600 in currency, all of the value of $2,625, which the defendant kept and converted to his own use. Accompanying the complaint was his affidavit setting forth that on June 23, 1948, the defendant Lounsbury entered the residence of the plaintiff and took therefrom the property described in the complaint and alleging that the debt sued for was not only fraudulently contracted but that the debtor is about to fraudulently conceal, assign or dispose of his property so as to hinder or delay his creditors, and alleging further that within two years prior to the filing of the affidavit he, the defendant, had fraudulently concealed or disposed of his property so as to hinder or delay his creditors.

Upon the filing of the verified complaint and affidavit, a hearing was had in the circuit court resulting in an order directing that a writ of attachment issue upon the filing of a bond in the sum of $5,250 with sureties to be approved by the clerk. This was done, and a writ of attachment issued directed to the sheriff of Whiteside county, directing the sheriff to attach so much of the property of Lounsbury as may be sufficient to satisfy the amount alleged to be due the plaintiff. The writ also directed the sheriff to summon Lounsbury and to also summon Carol MacBeth and Robert W. Besse as garnishees. The next day a garnishee summons directed to Ray Weber, doing business as Weber Motor Company, was issued as requested by the plaintiff. Service was duly had upon the several parties and the sheriff, by virtue of the writ of attachment, levied upon and seized certain items of personal property of Lounsbury.

Interrogatories propounded to Weber, and answers thereto were duly filed. In his answer, this garnishee stated that he was a Hudson automobile dealer in Sterling, doing business as Weber Motor Company; that he knew Lounsbury and Carol MacBeth; that on June 26, 1948, they went to his garage where a Hudson automobile, costing $3,083.65, was purchased; that Carol MacBeth made a down payment of $500 in currency; that on July 24, 1948, the Hudson car was delivered to Carol MacBeth and Lounsbury, that Weber received an Oldsmobile in the trade at a value of $825; that the balance of the purchase price, amounting to $1,758.65, was paid in cash; that on September 28, 1948, the Hudson car was returned by Carol MacBeth to Weber for resale, and it was sold for $3,165.75, and Weber had in his hands at the time of the service of the garnishee summons, the sum of $2,900.

On November 16, 1948, judgment was rendered in favor of the plaintiff Graham and against defendant Lounsbury for $2,625 and costs. Thereafter, on November 29, 1948, Carol MacBeth, after leave granted, filed her verified intervening petition alleging that she was the true and lawful owner of the property attached and also of the $2,900 in the hands of Weber, the garnishee. The prayer of the intervening petition was that an order be entered directing that the attached property be returned to her and the money in Weber's hands be paid to her. The answer of Graham to the intervening petition traversed the allegations thereof, denied that the intervenor was entitled to any relief and averred that the $2,900 in the hands of Weber is money derived from the sale of the Hudson automobile which was originally purchased from Weber on June 26, 1948, and which was subsequently returned to Weber and by him resold to Angus Watson.

The issues made by this intervening petition and answer were heard by the court, without a jury, and

resulted in a finding that the plaintiff Graham was entitled to receive the sum of $2,124.50 of the $2,900 in the hands of Weber and that Carol MacBeth was entitled to receive the balance, being $775.50. These amounts were arrived at by the trial court by allowing Carol MacBeth her proportion of the $2,900 based upon her ownership of the Oldsmobile which Weber received as a part of the purchase price for the new Hudson car. Appropriate judgments were rendered upon these findings in favor of Lounsbury, for the use of Graham and against Weber for $2,124.50 and in favor of Carol MacBeth and against Weber for $775.50. Subsequently, a motion was made to vacate this judgment which was, on April 29, 1949, denied. To reverse this order and the judgment for $2,124.50 in favor of Lounsbury for the use of Graham, the intervenor, Carol MacBeth appeals.

Counsel for appellee insists that the evidence discloses that Lounsbury, on June 23, 1949, burglarized the Graham home and obtained $2,600 cash therefrom which belonged to Graham; that Lounsbury, acting through Carol MacBeth, purchased a new Hudson automobile from Weber Motor Company, using this stolen money to make the purchase; that title to said automobile was taken in the name of Carol MacBeth in order to defraud Lounsbury's creditors, that on September 22, 1948, Lounsbury, represented by Carol MacBeth, resold this automobile to Weber Motor Company for $2,900; that the title to said automobile passed to Weber or to whomever he sold it, but the purchase price of $2,900 remains in Weber's hands and is subject to garnishment in this proceeding.

Counsel for appellant insist that there is not a scintilla of evidence in this record to show that any part of the purchase price of the Hudson automobile was furnished by Lounsbury or that any money stolen from Graham by Lounsbury was used in the purchase of said

79

automobile; that it is unthinkable that Lounsbury, under the facts as shown in this record, could have recovered any part of the $2,900 in the hands of the garnishee and if he could not, the law is well settled that the judgment creditor, Graham, appellee here, could not recover.

Ray Weber, the garnishee, testified that he became acquainted with Carol MacBeth early in June 1948; that on June 26, 1948, she came into his place of business in Sterling with Emery Lounsbury and that was the first time he ever saw Lounsbury; that they inquired of him when delivery could be had of a new automobile and were told that delivery depended upon the style and color of the car purchased; that at that time, a sale of the Hudson car was made to Carol MacBeth; that they talked about a deposit and Carol made a deposit of $500, all in five, ten and twenty-dollar bills, and a receipt for that amount was executed by Weber and given Carol. According to this witness, he agreed to accept her 1940 Oldsmobile in trade, but the amount to be allowed for it was not determined at that time. On July 9, 1948, this new Hudson car was delivered to Weber, and he placed it on display for several days. On July 22, 1948, Carol, unaccompanied, came into Weber's place of business and paid him $1,758.65 in cash, and he gave her an invoice showing that the Weber Motor Company had sold to Carol MacBeth this car, describing it. This invoice shows that the delivered price of the car was $2,505.86; that additional equipment, gas, oil, labor and sales tax brought the total cash price of the car to $3,083.65. This invoice shows the trade-in allowance of the Oldsmobile to be $825; that a cash deposit of $500 had been made and the balance of $1,758.65 had been paid. Weber testified that the sale was made to Carol MacBeth; that he received her Oldsmobile in trade and that the title to the new car and bill of sale was issued to her and

delivery of the car was made on July 24, 1948; that he had an agreement with Carol that if any circumstances should arise whereby the new car was to be sold, he Weber, had a right to take the car back at an agreed price. He further testified that early in September Carol brought the car back for resale, and he sold it and notified Carol that he had sold it for $2,900 and had the money.

Carol MacBeth testified that she had owned the Oldsmobile Coupe, which she traded in on the Hudson, for two years; that the trade-in allowance for that car was $825; that she bought the new Hudson and paid the balance of the purchase price in cash; that she had gone to Weber's place of business, in connection with the purchase of a new car, several weeks before June 26, 1948; that she and Lounsbury were together when the new Hudson was delivered to her, and that Lounsbury drove it away, accompanied by her. She testified that the money she used to buy the car came from her savings, amounting to $258 and the balance of $2,000 she borrowed from her mother, Mrs. Bowlesby. A note, dated July 22, 1948, signed by Carol MacBeth, payable to Carrie L. G. Bowlesby for $2,000, due three years after date, was offered in evidence but denied admission by the court.

The deposition of Emery Lounsbury was taken by agreement of counsel but, upon the hearing of the case, the evidence of this witness on direct examination by counsel for appellant was not offered, but appellee offered and read the cross-examination of this witness. His evidence was that prior to 1945 he had been convicted of a felony in Cook county and sentenced to the penitentiary and upon his release on parole, he came to Sterling on February 8, 1945, and resided there continuously until October 1948; that shortly after coming to Sterling, he became acquainted with appellant and frequently used her car, his arrangement with

her being that he would pay for the operation of the car in return for the privilege of using it; that one of the conditions of his parole was that he would not own an automobile for business or pleasure unless granted permission by the parole agent, and he never obtained that permission; that he and appellant were good friends, and he took part of his meals at her home but did not room there, although he had some property, which he had acquired unlawfully, stored there. It was stipulated that from February 10, 1945, to March 23, 1946, Lounsbury was employed by Northwestern Steel and Wire Company, and from and after April 6, 1946, he worked for another company, and his weekly wage was approximately $50.

Boyd Kimmel testified that he was the sheriff of Whiteside county, knew appellant and had a conversation with her at her home in the presence of appellant's father and E. E. Ohda, chief of police of Sterling. In this conversation, Mr. Kimmel asked her if the Hudson automobile belonged to her, and she said it did and that she had borrowed the money to pay for it. The sheriff asked her if she borrowed it from a finance company, and she said: "No, from my dad." The witness further testified that the father said nothing but nodded his head in approval of his daughter's statement.

It is not necessary to set forth the testimony of Velma Wallace, Shirley Giffrow, D. W. Oglevee or the several other witnesses who testified. We have read their evidence as abstracted and have, also, read much of the record in this case which consists of 513 pages.

In disposing of the case, the trial court filed an opinion giving the reasons for his conclusions, findings and judgment. In this opinion, the trial court stated that the question for him to determine was whether the preponderance of the evidence disclosed that Mrs. MacBeth or Lounsbury furnished the money with which the Hudson automobile was purchased.

In support of his conclusion that Lounsbury furnished the money and that all intervenor furnished toward the purchase of this Hudson car was her used Oldsmobile, the court stated that from a consideration of all the facts and circumstances in evidence he found himself unable to believe the testimony of the intervenor to the effect that she furnished the cash used in the purchase of the Hudson car; that courts are not required to believe an improbable story even though sworn to by a witness and not directly contradicted. As inconsistent with intervenor's claim of ownership of the Hudson car, the court stated that the evidence disclosed that intervenor was a self-supporting divorcee, an employee of the Illinois Public Aid Commission with a small income and small savings; that when she had purchased even a used car at small cost, she used the customary financing methods with small monthly payments; that she had no funds of her own with which to buy a new car; that she paid $2,258.65 in cash for this new car; that she told the sheriff she borrowed the necessary funds to make this purchase from her father; that upon this trial she testified that her mother loaned her the money; that both her father and mother were present in court when she testified, but neither of them were called by her as a witness; that Lounsbury was with intervenor selecting the car; that Lounsbury was with intervenor in their interviews with the dealer concerning the purchase of the car, but when payments were made, intervenor was alone; that Lounsbury was with her when the car was delivered and drove the car away after a demonstration by the dealer; that about eleven o'clock of the evening of the day the car was delivered, he had it in his exclusive possession and picked up Shirley Giffrow, a girl friend, and took her for a ride and told her that he had gotten his car that afternoon; that on the following day, again having exclusive possession of the car, he picked up Velma Wallace and took her for a drive and told her

the car was his; that on several occasions the car was parked in front of his lodgings, and he talked to a neighbor about his new car; that Lounsbury had possession of the new car frequently, told others that the car was his, that he had bought it, and he informed other witnesses that the title was in intervenor merely to conceal his ownership; that these statements of Lounsbury of ownership are competent and admissible against intervenor when made while he had exclusive possession of the automobile, as an explanation of the character of his possession.

The trial court also stated that the evidence disclosed that intervenor had possession of the car for a considerable portion of the time, claiming to own it and using it in her occupation; that she owned, at one time, a second-hand Plymouth automobile which she traded in on a used Oldsmobile and that there was some evidence, of an inconclusive nature, to the effect that Lounsbury was instrumental and made a contribution in that exchange; that it also appeared that Lounsbury had been previously convicted of a felony and, when admitted to parole, he executed an agreement not to own an automobile; that he and intervenor were intimately acquainted; that in 1945 the husband of intervenor secured a divorce from her on the ground of adultery with Lounsbury; that Lounsbury made her home his headquarters and stored a quantity of merchandise in the attic of her home. This evidence the court concluded tends to prove that if Lounsbury decided to buy a car, he would likely have title placed in intervenor in order to conceal his ownership, and, although using the car freely himself, would also permit her to use it part of the time.

The trial court recognized the rule that the party asserting fraud has the burden of proof to establish it; that while fraud must be proven, circumstantial evidence is competent. (37 C. J. S. Fraudulent

Conveyances, secs. 397 and 416, pp. 1231, 1245; *Zwick v. Catavenis,* 331 Ill. 240–248); that if an interested party tells an improbable story, the failure to call an available corroborating witness, who must be cognizant of the facts, will weigh heavily against such party (20 Am. Jur. Evidence, secs. 183–188, pp. 188–193) and that the testimony of such a witness becomes more unsatisfactory upon failure to produce corroboration which might have been easily produced. (*Morrison v. Beers,* 327 Ill. 139–143).

We have considered the able brief and argument of counsel for appellant but do not agree with their conclusion that the decision of the trial court was based on incompetent evidence and predicated solely on conjectural or suspicious circumstances or that the trial court overlooked the principle of law which required appellee to prove his case by a preponderance of the evidence. We concur in the findings, conclusions and judgment of the trial court. That judgment is sustained by the evidence, and we find no reversible error in this record. The judgment of the circuit court of Whiteside county is affirmed.

*Judgment affirmed.*