Leon v. Leon.

---

### Bartolo Leon v. Eva Leon et al.

1. MEASURE OF DAMAGES—*Action by Heirs Against an Administrator.*—In a suit brought by heirs against the personal representatives of a deceased ancestor, to require an account for money received by such representative, the measure of the recovery is not necessarily the amount of money received by such representative. Equity requires the accounting only to the heirs for any loss they may have sustained.

2. ADMINISTRATORS—*Protected by Formal Orders of the County Court.*—An administrator should not rely upon the verbal authority of a county judge for instructions in regard to his dealings with the estate. He should have a formal order of the County Court, duly entered of record, authorizing him to act.

3. GUARDIANS—*To be Dealt With Equitably.*—Because a guardian has acted in an irregular way, is no reason why he should be dealt with inequitably. In the absence of proof showing that his wards have been injuriously affected by his action, and in the absence of fraud on his part, the account should be stated according to the principles of equity.

Memorandum.—In chancery. Appeal from the Circuit Court of Montgomery County; the Hon. JACOB FOUKE, Judge, presiding. Bill and decree for accounting; appeal by defendant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 14, 1894.

J. M. TRUITT and AMOS MILLER, attorneys for appellant.

WILLIAM A. HOWETT and LANE & COOPER, attorneys for appellees.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This is an appeal from a decree in chancery against the appellant for $3,151.27.

The bill was filed by Eva and Ellenora Leon against appellant, Bartolo Leon, to compel him to account for money received in the capacity of administrator of Ellenora Leon, deceased, mother of complainants and of Mary Leon, who was joined as defendant, and also for money received by him in the capacity of guardian of the complainants and of the said Mary.

It was alleged that as administrator he had fraudulently allowed a claim to be probated against the estate for the sum of one thousand dollars in favor of Antonio Leon, father of the complainants and of said Mary, and had paid the same knowing that the claim was unjust, and therefore that he ought to account for the sum so withdrawn from the estate.

The court found for complainants as to this item. While the evidence is not entirely clear, yet we are disposed to agree with the Circuit Court that the charge is sustained. It is, however, objected here, as it was in the Circuit Court, that admitting the claim was unjust and was fraudulently allowed,

the heirs ought not to recover of the administrator more than two-thirds of the amount, for the reason that said Antonio, their father, was entitled to one-third of the money thus withdrawn in his right as husband of the intestate. In other words, if this sum of $1,000 had remained in the estate he would have drawn one-third of it upon the final distribution, and so the alleged fraudulent act of the administrator had injured the heirs not more than the remaining two-thirds, which would have been added to the sum received by them on the final distribution. The answer made by appellees to this position is that "no one shall be permitted to take advantage of his own wrong." We do not see the force or application of this answer.

It is equitable to require an administrator to account to the heirs for any loss they have sustained by his fraudulent act, but it is not equitable to give them more in that behalf than they would otherwise have received. If they are made whole they should be content.

Another answer suggested in the brief of appellees is that a claim was allowed against the estate of Mrs. Leon in favor of the Ætna Life Insurance Co., on a note signed by Antonio and Mrs. Leon, which was really the debt of Antonio, and that as this was paid by the administrator out of the funds of the estate there arose a claim in favor of the estate against Antonio for the amount, some $568, which would exceed the one-third of said fraudulent allowance.

If this were established by the proof, the position would seem to be well taken; but there is nothing in the record to sustain it. All that appears on this point is that the administrator, in his final report, asked credit for cash paid on a claim in favor of said Ætna Life Ins. Co. for said amount, and that his voucher therefor consisted of a receipt signed by certain attorneys acknowledging payment to said company in full of the "A. Leon loan." The appellees sought to add to the record filed in this court a copy of the note upon which said claim was based which appeared to have been signed by Antonio Leon and Ellenora Leon, but it was not made a part of the record by the certificate

of evidence, and we were of opinion that it could not be so considered on the showing made in support of the motion to amend the record. If, however, it were properly before us, it would not be sufficient to support the position that the debt was that of Antonio alone. Additional evidence would be required for that purpose.

We are of opinion it was error, upon the case as made by the record, to charge the appellant with more than two-thirds of said sum of $1,000.

The alleged misfeasance of the appellant, as guardian, was that he had received and failed to account for certain rents of lands inherited by the complainants and their sister Mary. The land consisted of a farm belonging to their mother, who died in September, 1876. It was rented by appellant to James Drew for three years from March 1, 1877, and his reports as guardian show that he duly accounted for the rent of those years.

In the first of these reports he asked credit for six payments of $54 each for money paid to Antonio Leon for keeping the three wards. These credits were allowed by the County Court, and nothing appears in this record to justify the conclusion that they were improperly allowed, yet we find that two of these credits of $54 each were disallowed in the statement of the account in this decree, and thereby the appellant was charged with the aggregate of $104, and interest thereon annually compounded. This was erroneous.

For three years after Drew left the farm, it was occupied by Antonio Leon, who had married a second time, and with whom the three wards of appellant had lived ever since the death of their mother. He fed and clothed them and sent them to school. He was without means, except a pension which was afterward granted to him by the United States government.

He was in poor health, and his circumstances were such as satisfied the County Court that it was proper to pay him from the estate of the wards a reasonable sum for their support. While Drew lived on the farm this was done by cash payments, as already stated. While Antonio lived on the farm, with the approval of the county judge, he was allowed

by the guardian to keep the rents in consideration of paying taxes and supporting the wards.

Finally, his health was so impaired that he gave up the farm and afterward went away to Colorado, California, and at last, to Alabama, where he died in 1889, of consumption, which had afflicted him from a date preceding the death of his first wife. He kept and supported his children, the wards of the appellant, and two others born of the second marriage, up to his death.

After he left the farm it was rented by appellant to Fred Yeske for five years, to John Pick for two years, and to James Gillard for two years, for cash $150, for one year, $240, each for four years, and at $200 each the remaining years, all of which rents were paid to appellant, except $100, which was paid by the tenant to Antonio in the fall of 1887. The evidence satisfactorily shows that the moneys so received by appellant were by him paid to Antonio up to the time of his death, except what was required for necessary repairs, etc., and that this was in consideration that he would continue to support the wards. From the time Antonio went on the farm until he died, a period of some nine years, the appellant did not charge himself with the rents, nor did he take credit for moneys paid to Antonio for support of wards; but, as he testifies, and as he is corroborated in that respect, having the verbal authority of the county judge, he allowed Antonio to keep the rents while he remained on the farm and paid them to him after he left in consideration of the care and support of the wards, and the reports made by him as guardian during this period, contain but few credits on account of the wards. From the proof it is reasonably clear that the care and support of the wards would have been worth as much as the rents if not more; and if furnished by a stranger would certainly have cost considerably more. It appears that Antonio cared for the children properly; that they were always comfortably clad, and that if his dower interest in the land had been deducted there would have been less than enough remaining to compensate him for their support.

In the account as it was stated by the decree herein, the

appellant was charged with rents from the time Antonio left the farm, with compound interest, without credit for the support of the wards.

This was, as we think, inequitable and erroneous. While the course pursued was irregular, yet there was no substantial injury done to the wards.

The verbal authority of the county judge to make this arrangement was certainly not what the appellant should have relied upon. He should have charged himself in his reports with the rents, and should have asked credit for whatever was right for the support of the wards, which probably would have exceeded their income, had they been charged what it was reasonably worth; or he should have had a formal order of the County Court, duly entered of record, authorizing him to do what he did. But because he acted in this irregular way is no reason why he should be dealt with inequitably.

In the absence of proof showing that the wards were injuriously affected by his action, and in the absence of fraud on his part, the account should be stated according to the principles of equity. If the rents were no more than equal to what he paid out for necessary repairs or taxes and what he properly expended for the wards in addition to what might have been fairly charged by Antonio for their support and care from the time the latter left the farm until he died, then the appellant should not be charged for the rents during that period.

The appellant made no charge for commissions in his reports, but he now seeks a credit on that account. We see no reason why he should not be allowed fairly in this regard within the limits fixed by statute.

It is not necessary to discuss the question raised by appellant as to the propriety of granting to Mary, who was in form a defendant, the same measure of relief accorded to complainants, the rights of all three being alike.

If upon another hearing it shall be deemed necessary, the pleadings can be amended to avoid the objection urged in this behalf, as to the necessity whereof we express no opinion.

The decree will be reversed and the cause remanded.