Louis F. Reinhold, Appellee, v. Frank Lingbeek and Lillian Lingbeek, Now Lillian Piefer, Also Known as Lillian Pieper, Appellants, and Jans Lingbeek, Sr., Appellee.

Gen. No. 9,874.

October term, 1943.        Heard in this court at the Opinion filed December 28, 1943.

FRANKLIN J. STRANSKY and OTTO W. BERG, both of Freeport, for appellants.

ASCHER & ELLIS, of Freeport, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

The appellants, Frank Lingbeek and Lillian Lingbeek, now Lillian Piefer, also known as Lillian Pieper, have appealed from an order of the circuit court of Stephenson county, which issued a permanent injunction restraining the enforcement of their separate judgments, entered against Louis F. Reinhold, the appellee in that court. The hearing was had on an appeal from the county court. The court directed the appellee to account for $1,249.28 found due each of the appellants, as claimed by them on their objections to his report as their guardian. There is no charge or indication that the guardian, Louis F. Reinhold, an attorney-at-law, practicing his profession in Stephenson county, has appropriated to his own use or benefit any property of his wards. It appears from the record, however, that the guardian invested what we must consider as funds or assets of his wards, as will

hereafter appear, in promissory notes which were secured by a second mortgage contrary to section 22 of the Guardian and Ward Act, in force in the year 1920, when the notes and mortgage were accepted by the guardian for definite and ascertainable values in property belonging to his wards.

The judgments were entered on April 28, 1936. It appears from the record that the guardian for some years past has taken the position that a court of equity has broad comprehensive powers to determine questions on equitable principles, according to the facts appearing before it, as distinguished from the limited equitable jurisdiction of county courts, and that on appeal thereto, the circuit courts would have powers, and now should, approve the transaction which is attacked by the wards. This position of the guardian is the sole ground for his complaint for the writ of injunction to restrain the enforcement of the judgments. The transaction of the guardian is now brought into focus in the light of after events and the guardian finds himself in an unfortunate position, although it appears that he acted in good faith.

The guardian has delayed in making a settlement with his wards, because of his denial of liability for the amounts with which he is held accountable by the order of the county court, and the judgments of the circuit court. The charge is made in the circuit court that the guardian was guilty of fraud and conspiracy against his wards, when he loaned their money as he did. The principal question submitted to this court is, whether a court of equity should have accepted jurisdiction over the estate of the minors notwithstanding the judgments of the county and circuit courts. We consider it only justice that the contention of the guardian should be stated more in detail.

It is stated by the guardian in his complaint for the injunction as follows: "Plaintiff further represents that on an appeal from an order of the county court

to the circuit court the sitting judge is bound by the same rules of law in considering a case as the county judge . . . and the county judge lacks full equitable jurisdiction in the consideration of such cases. . : . On the appeal which the plaintiff took he did not have an opportunity to present defenses and the court could not consider all the equitable rights, defenses and principles that should have been applied and considered by the chancellor upon a hearing before him on an equitable complaint. That the juris-diction of the chancellor on an equitable complaint extends to make a full and complete adjustment of all equitable rights and benefits and to consider equitable principles on, the hearing of this case and the application of the evidence on the hearing. . . . That full and complete equity and justice cannot be done in this case except by a complaint in chancery and a sub-mission to the court having full and complete jurisdiction so that equitable principles, rights and remedies may be fully applied by the court in a complete determination hereof.''

The guardian relies on the case of *Chapman v. American Surety Co.*, 261 Ill. 594 and argues that the facts set forth in his complaint for the injunction warranted a court of equity to accept jurisdiction to review his transaction as guardian and to approve or disapprove the same; that the *Chapman* case is authority for his contention that his action should be approved and confirmed by a court of equity.

In the *Chapman* case the Supreme Court states: ''This court has more than once stated that courts of equity have a paramount jurisdiction in matters of administration and settlement of estates and may control courts of law in their action thereon, and have also similar plenary jurisdiction over the persons and estates of infants, and in exercising that jurisdiction may cause to be done whatever may be necessary to preserve their estates and protect their interests. (Cit-

ing authorities.) The rule now appears to be that courts of equity will not exercise jurisdiction over the administration of estates in ordinary cases.'' (Citing cases.) Also, ''In settling the accounts of guardians it has been repeatedly held that the probate court may exercise equitable jurisdiction, 'not its full jurisdiction, but such as is adapted to its organization and the mode of proceeding in that tribunal.' (*Wadsworth v. Connel,* 104 Ill. 369.) It lies in the nature of these courts that in the exercise of their jurisdiction they are not confined to legal principles or the rules of common law courts, but exercise equitable powers as well. (1 Woerner's Am. Law of Administration 2d ed.—sec. 149.) Whenever, within the scope of their statutory jurisdiction, the relief to be administered, the right to be enforced or the defense of an action properly depending before them involves the application of equitable principles, their powers are commensurate with the duties demanding their exercise, whether legal or equitable. (*Shepard v. Speer,* 140 Ill. 238.)''

Most certainly the county court and the circuit court on appeal had jurisdiction to decide whether the guardian had violated the statutory prohibition against a guardian loaning his wards' money secured by a second mortgage, and to determine his liability if there was proved a violation of the statute which resulted in a loss of his wards' property or rights in property. (Sections 14, 15 and 34 of the former Guardian and Ward Act.) It is therefore evident that said courts had power to apply equitable principles in passing upon defenses of the guardian, and the relief to be administered, upon a hearing of the settlement of the guardian's account.

In his complaint for the injunction the guardian states that in the hearing before the circuit court on his appeal from the county court ordering him to account to his wards, he filed a new report as guardian

in which he set forth in full all the transactions occurring between the time he was appointed guardian up to the time that said report was filed in the circuit court. Manifestly there would be no ground for the acceptance of jurisdiction in the injunction suit, unless the complaint set forth reasons of an equitable nature why his transactions as guardian should be approved by a court of equity, and of which reasons the circuit court, on the appeal, from the county court could not consider because of its limited powers to pass on equitable defenses and remedies. (*Shepard v. Speer,* 140 Ill. 238.)

In the case of *Shepard v. Speer,* 140 Ill. 238, on page 246, the Supreme Court states: "This court has held in a number of decisions, that it is only in extraordinary cases that a court of equity will assume jurisdiction in the settlement of an estate. Indeed, in *Harding v. Shepard,* 107 Ill. 264, an effort was made in this same estate to transfer the settlement of the estate from the probate court to a court of equity, and in the decision of that case denying the right it is said: 'It is well settled that a court of chancery will not, except in extraordinary cases, supersede the probate court in the administration of an estate. (Citing cases.) To maintain the present bill would be to deprive the probate court of all further power and jurisdiction over the estate. What extra circumstances are there in this case that demand such treatment? We fail to perceive any.' What was said when the question was presented in the case cited is applicable now."

It is plain that if the enforcement of the judgments were restrained by a writ of injunction unless there were extraordinary circumstances, such as that the county court did not have power to pass on a transaction of the guardian which a court of equity does have (as was decided in the *Chapman* case) the court of chancery issuing the injunction would in effect supersede the county court in its adjudication of the ques-

tion of the settlement of the guardian's account and the remedy to be administered, because the guardian claimed that he had equitable defenses to be considered on the adjustment of his account with his ward. To hold otherwise would give little force and effect to decisions of county courts involving guardianship accounts and also result in intolerable conflicts between the county courts and the court of chancery.

We have made the statement that the guardian acted in good faith and this is our conclusion after a careful consideration of the competent evidence in the record on that point. The charge is made in this court that the guardian does not come into a court of equity with clean hands; that he was guilty of fraud and conspiracy. A motion was made by the wards to dissolve the temporary injunction to restrain the enforcement of the judgments. The chancellor finds in his written opinion that the guardian acted honestly and without fraud. On the hearing to make the temporary injunction permanent, another chancellor, after a careful consideration of the testimony of the witness who appeared before him, concurred in the finding of his predecessor. Had either of these judges believed that the guardian acted in bad faith or fraudulently, his request for the aid of a court of equity would, undoubtedly, have fallen on deaf ears and been refused. A guardian is required to observe that care and diligence in the performance of his duties that a good and conscientious businessman exercises in his own affairs, under like circumstances. (*Kingsbury v. Powers,* 131 Ill. 182.) With this rule in mind, to its fullest import, we have carefully considered the record in this case and it cannot be fairly said, and it should not be said, that the guardian was guilty of fraud or conspiracy against his wards.

Louis F. Reinhold was appointed guardian of the six minor children of Jans Lingbeek and Mary Lingbeek by the county court of Stephenson county on

June 14, 1920. The eldest child was then about 17 years of age. Shortly before his appointment Mary Lingbeek died intestate seized of an undivided one-half interest in a farm of 156 acres in that county as a tenant in common with her husband under a deed conveying the farm to her and her husband. She left surviving, her husband and seven children as her heirs-at-law. Soon after the death of Mrs. Lingbeek one of the seven children died in infancy leaving as his heirs-at-law his father and his six brothers and sisters. The farm was occupied by the parents as a homestead at the time Mrs. Lingbeek died. It appears that after the death of the wife and mother, Jans Lingbeek, as purchaser, was the owner of an undivided one-half interest in the farm, homestead estate in the entire farm and with dower in an undivided one half of the farm owned by his seven children as tenants in common. (*Lininger v. Helpenstell*, 229 Ill. 369.) Upon the death of his infant son Jans Lingbeek inherited from him, an undivided two fifty-sixths interest of an undivided one half of the farm, or two one hundred-twelfths, making his total title in the farm 58/112ths, as tenants in common with his six children. Each child then owned 9/112ths interest in the farm subject, of course, to the dower right and homestead estate of their father. (*Cronkhite v. Strain*, 210 Ill. 331.) When Mrs. Lingbeek died there was a purchase money mortgage on the farm to the amount of $6,450.

After the death of his wife and infant son, Jans Lingbeek consulted Attorney Albert H. Manus about the settlement of his wife's estate and his children's interests in the farm. Lingbeek was appointed administrator of his wife's estate, paid her funeral expenses, a small claim for medical charges, and costs of administration, made a final report and was discharged, in due time as such administrator. Mr. Manus and Lingbeek secured the appointment of

Reinhold as guardian of the six children. At that time Reinhold and Manus had adjoining offices and used a common reception room for their respective clients. These two attorneys and Lingbeek consulted about the guardianship affairs and the interests of the father and his children in the farm and determined what they considered best to be done under the circumstances.

Lingbeek was not willing to release his dower and homestead interests in a partition suit, or in a proceeding to sell his widow's one-half interest in the farm to pay the debts of her estate. Lingbeek desired to remain on the farm as his home and keep his children together there in his care and custody. Lingbeek did not want to claim his dower and homestead interests against his children. If he desired, Lingbeek was entitled to have his dower assigned out of the rents and profits of an undivided one-half part of the farm. The undivided half interest in the farm, owned by his wife at the time of her death, was required to contribute to his homestead estate. (*Grote v. Grote*, 275 Ill. 206.) Lingbeek was then about 45 years old. Thus it appeared to the two attorneys that there were complications making it unlikely that a partition suit, or a sale of real estate to pay Mrs. Lingbeek's debts, was feasible, or for the best interests of the wards.

The result of the discussions between Lingbeek and the attorneys was that Lingbeek should pay the debts of his wife, and that the guardian should sell the wards' interests in the real estate under a guardianship sale in the county court, the expenses of which proceeding Lingbeek would also pay and that Lingbeek was to be the purchaser at the guardianship sale and to waive his dower and homestead interests by executing a mortgage in favor of the guardian for the amount of his bid at the sale.

It was thereupon decided by the attorneys that the sum of the value of Lingbeek's dower and homestead

interest should be calculated and this amount added to the value of his undivided 58/112ths interest in the farm should be deducted from the market value of the farm above the amount of the purchase money mortgage thereon. The result of this computation it was determined, should be the amount of Lingbeek's bid at the guardian's sale, as representing the then value of the wards' interests in the farm. The amount arrived at as the value of the minors' interests in the farm was $5,500, less four hundred dollars paid by Lingbeek to pay the debts of his widow's estate and the costs of the guardianship sale, thus leaving $5,100 which was to be the amount of Lingbeek's bid at the sale. Lingbeek at that time had no ready cash to make good his bid as agreed upon. There is some evidence in the record to the effect that Lingbeek then had farm equipment and livestock of the probable value of $3,000, but it is mere speculation to say that he could have borrowed thereon a sufficient amount to become a cash bidder at the sale. By giving the guardian a mortgage on the farm as security for his bid at the sale it was realized that he would therein waive his dower and homestead interests. It was also known to the attorneys that the mortgage to be executed by Lingbeek would be a second mortgage on the farm. The mortgage of Lingbeek was to secure six notes for $850 each, with 5½ per cent interest, and payable to his six children respectively.

There was an understanding between Lingbeek and the guardian that the expenses of supporting each ward was to be a set-off against the respective notes when each ward became of age; or, to state the matter exactly, it was understood that Lingbeek would file claims for the support of his children in the guardianship estate. We comment here that the guardian was either not well informed of the duty of a father to support his minor children, or he was willing to assume a grave risk. (46 C. J. 1275; *ib.*, p. 1117.) After

this plan of procedure was adopted, the two attorneys consulted the county judge and explained to him the conditions and circumstances of the matter including the prohibition of the statute against a guardian making a loan of his wards' property secured by a second mortgage. The county judge stated that he would approve the second mortgage under the facts as presented to him by the attorneys.

The guardian presented his petition for the sale of the wards' interests in the real estate. An order was entered directing the sale for cash, and the guardian made report of sale in which he stated that the sale resulted in a cash sale for $5,500 and Lingbeek was the best bidder. In fact the sale was duly advertised and Lingbeek was the only bidder. The sale was made subject to the homestead estate and dower of Lingbeek, as he was not willing to release those rights as against strangers, but was willing to do so in favor of his children, as we have before stated. The guardian executed and delivered his deed to Lingbeek as the purchaser at said sale.

It is objected that the testimony of Manus and Reinhold relative to their conversation with the county judge was incompetent on the ground that an action of a court of record cannot be proved by parol evidence. This is the general rule. (*McIntyre v. People,* 103 Ill. 142.) However, we are of the opinion that the testimony is competent, under the charge made here that the guardian does not come into a court of equity with clean hands. (27 C. J. 57, section 191, *et seq.*)

Lingbeek executed the six notes and the mortgage and the guardian secured the written order of the county court approving them. The notes and mortgage were delivered to the guardian and he held them as assets of his wards' estate.

Subsequent events in the matter have little bearing on the question presented on this appeal. It is sufficient to state that Lingbeek, with the aid and approval

of the guardian, borrowed money secured by mortgage which was made a first lien on the farm to pay off the purchase money mortgage. The guardian for a time released the mortgage held by him from the records in the recorder's office. Afterwards, by the same means, another first mortgage was placed on the farm for a larger amount to pay the prior mortgage and, at the insistence of Lingbeek's children, to build a new house on the farm. The last mentioned mortgage has been foreclosed and the farm lost to Lingbeek and the wards. Notes of the guardian's estate which are not involved in this appeal, have been paid by Lingbeek, or the payment thereof successfully defended by the guardian in other litigations under defenses not made in this case. It appears that Lingbeek is now insolvent. (He has not filed claims against the wards' estate for expenses of their support.)

It is clear that the guardian determined and fixed a definite value of the interests of his wards in the farm and he effected a commutation of their property; that is, he fixed and changed the wards' values in land to a money value. This money of his wards the guardian loaned on notes secured by a second mortgage, contrary to the statutory prohibition, and he must abide by the result. Equity follows the law and there was not presented to the circuit court by the guardian's complaint, for the writ of injunction extraordinary circumstances warranting that court, as a court of equity, to assume jurisdiction over the settlement of the guardian's account with his wards. The judgments foreclose any consideration here that they are not correct in amounts.

The case is reversed and remanded to the circuit court of Stephenson county with direction to dismiss the complaint for want of equity.

*Reversed and remanded.*