*In re* ESTATE OF WILLIAM A. MURPHY, a/k/a WILLARD MURPHY, a Disabled Person (Glendola Baker, Objector-Appellant, v. George Murphy, Guardian of the Estate of William A. Murphy, a/k/a Willard Murphy, a Disabled Person, Guardian-Appellee).

Fifth District   No. 5—86—0644

Opinion filed October 19, 1987.

Walden E. Morris, of Jelliffe, Ferrell & Morris, of Harrisburg, and Dayton L. Thomas, of Ridgway, for appellant.

Charles W. Phillips, of Harrisburg, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:
Glendola Baker, objector-appellant, appeals from the order of the circuit court of Gallatin County overruling her objections to the final report and accounting filed by George Murphy, guardian-appellee, upon the death of the ward, William A. Murphy, a/k/a Willard Murphy.
In September of 1981, George Murphy, his brother and two sisters

jointly filed a petition for guardianship of their father Willard Murphy, an alleged disabled adult. The court found Willard Murphy to be a disabled adult and appointed George as plenary guardian. As part of his duties as plenary guardian, George filed with the court an initial inventory of the ward's estate. This inventory revealed that the ward owned 120 acres of farmland in Gallatin County. On November 25, 1981, the ward conveyed to his four children the 120 acres of farmland while reserving a life estate for himself. At the same time, the ward executed a new will in favor of the same four children, thereby revoking an earlier will which left his entire estate to Glendola Baker, his step-daughter.

In August of 1984, Willard Murphy died. George, as plenary guardian, filed a final report and accounting of the estate. This report did not include or in any way account for the 120 acres of farmland. Glendola filed objections to the report based on this fact. George filed a verified answer stating that the farmland had been conveyed by the ward to his children in 1981. After a hearing on the matter, the trial court overruled the objections and approved and confirmed the final report as filed.

Glendola argues on appeal the trial court erred in overruling her objections and in approving the final report. She believes George's explanation that the ward's property was conveyed away during the guardianship does not constitute a proper accounting and that he should either recover the farm for the ward's estate or reimburse the estate for the value of the property dissipated during his office.

■■ ■ A guardian has a duty at the end of his office to file a final report and to properly account for his ward's estate. (See *Bennett v. Bennett* (1960), 27 Ill. App. 2d 24, 34, 169 N.E.2d 172, 176; Ill. Rev. Stat. 1985, ch. 110½, par. 24—11.) When objections to this final report are made, the guardian has the burden to prove that the items objected to are just and proper. (See *Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 259, 29 N.E.2d 251, 258; *In re Estate of Roth* (1974), 24 Ill. App. 3d 412, 416, 321 N.E.2d 81, 84. See also 1A H. Horner, Probate Practice and Estates sec. 764 (4th ed. 1985).) This does not mean the guardian has fulfilled his duty by merely explaining an item's presence in or absence from the report; he must show that it was both *just* and *proper*.

■■ When questioned as to the absence of any mention of the 120-acre farmland from his final report, George replied the land had been conveyed away by his ward. Such an answer, standing alone, will not suffice. While no greater mental capacity is required to make a deed of voluntary settlement reserving a life estate than is required to make a

will (see *McGlaughlin v. Pickerel* (1943), 381 Ill. 574, 580-81, 46 N.E.2d 368, 372; *cf. Morrison v. Beers* (1927), 327 Ill. 139, 141, 158 N.E. 371, 372), no determination of the ward's capacity to make this particular deed was ever made. As guardian, George stood in a fiduciary relationship with his ward. (See *Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 261, 29 N.E.2d 251, 259; *Parsons v. Estate of Wambaugh* (1982), 110 Ill. App. 3d 374, 377, 442 N.E.2d 571, 572.) He had the duty to manage his ward's property with the "same degree of vigilance, diligence and prudence as a reasonable man would use in managing his own property." (*Parsons v. Estate of Wambaugh* (1982), 110 Ill. App. 3d 374, 377, 442 N.E.2d 571, 572-73.) George allowed his ward to convey away a major asset of his estate apparently without question. Surely if the ward had transferred his land to the first stranger he met, the guardian would have taken steps to protect the estate. George's duty was no less because he was one of the grantees of the deed. In fact, it was higher. See *Bennett v. Bennett* (1960), 27 Ill. App. 2d 24, 33, 169 N.E.2d 172, 176.

■ We note that Glendola could have brought a direct action to cancel the deed (see *Krasauski v. Birbalas* (1964), 46 Ill. App. 2d 226, 231, 197 N.E.2d 140, 143), but under the posture of this proceeding, the validity of the deed could not be determined because certain necessary parties were not joined. However, a determination as to whether such a conveyance was of benefit to the ward and his estate certainly could and should have been made. While precluded from adjudicating the validity of the deed itself, the trial court must decide whether the conveyance was favorable to the ward's estate, whether the ward had the capacity to make such a conveyance in the first place, and whether George fulfilled his fiduciary duties as a guardian in protecting and managing the estate. For this reason, we are compelled to remand this cause for further proceedings on the propriety of the transaction and the guardian's actions or inaction. See *Reinhold v. Lingbeek* (1943), 321 Ill. App. 119, 122, 52 N.E.2d 294, 296. See also *Bennett v. Bennett* (1960), 27 Ill. App. 2d 24, 34, 169 N.E.2d 172, 176.

For the foregoing reasons we reverse and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

HARRISON and WELCH, JJ., concur.