# Illinois Official Reports

## Appellate Court

*Rucker v. Rucker*, 2014 IL App (1st) 132834

| | |
|---|---|
| Appellate Court Caption | PATRICK L. RUCKER, Plaintiff-Appellee, v. WILLIE JAMES RUCKER, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2834 |
| Filed | November 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant mishandled the guardian estate established for his nephew following the death of the nephew's mother and that defendant was guilty of breach of fiduciary duty, negligence, and conversion, and seeking an equitable accounting, the trial court properly denied defendant's motions for a directed finding and summary judgment based on the finding that plaintiff presented sufficient evidence to support his claims, and after a bench trial, plaintiff was properly awarded $20,000 in damages as a result of defendant's conduct, especially in the absence of any documentary evidence supporting defendant's oral accounting of the management of the nephew's estate. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-2270; the Hon. Mosche Jacobius, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Charles E. Pinkston, of Chicago, for appellant.

Ellen E. Douglass, of Law Offices of Ellen E. Douglass, of Chicago, for appellee.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Patrick Rucker accused his uncle, defendant Willie Rucker, of mishandling the guardian estate established after the death of Patrick's mother. Patrick brought suit alleging breach of fiduciary duty, equitable accounting, negligence, and conversion. After a bench trial, the trial court found in Patrick's favor on two counts: breach of fiduciary duty and negligence. The court entered judgment against Willie for $20,000.

¶ 2    Willie contends the trial court erred in finding he breached his fiduciary duty and was negligent as guardian of Patrick's estate by retaining all rents and profits derived from estate property, failing to provide an accounting, and not properly transferring the estate property when Patrick reached majority. Willie also contends Patrick failed to establish he suffered any quantifiable actual damages or any damages at all as a result of Willie's guardianship. Willie further contends the court improperly denied both his motion to dismiss and later motion for summary judgment.

¶ 3    The trial court properly held Willie acted negligently as guardian of Patrick's estate. As a result of Willie's breach of his duty to provide accountings of the estate, there is no proof of how he managed Patrick's estate. Plaintiff suffered damages as result of Willie's conduct, particularly his failure to document expenditures. We uphold the trial court's damages award for $20,000. The damages are not purely speculative, as Willie suggests, but rather based on the record.

¶ 4                                    BACKGROUND
¶ 5    In February 1993, Patrick's mother and Willie's sister, Anna Rucker died. Patrick was 14 years old. Willie was appointed guardian of Patrick's estate and charged with administering the estate in accordance with the Illinois Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 1992)). Patrick's grandmother and Willie's mother, Shirley Rucker, became guardian over Patrick's person. *In re* Estate of Rucker, No. 93 PG 5529 (Cir. Ct. Will Co.). Patrick's $75,000 estate included $50,000 in cash proceeds from a life insurance policy and $25,000 of real estate located in University Park, Illinois (first property).

¶ 6    During his minority Patrick lived with his grandmother and his care was provided for by $300 in social security income a month and by Willie, who received $50,000 on behalf of

- 2 -

Patrick. Willie gave Patrick $20,000 of the $50,000 as a lump sum when he reached the age of majority (18). The following disbursements, totaling $21,600, were also made: (i) $6,200 in funeral expenses for Anna Rucker; (ii) $5,500 in educational expenses for Patrick; (iii) $1,800 bond to act as guardian; (iv) $3,600 car 1 for Patrick; and (v) $4,500 car 2 for Patrick. Willie maintains the remaining amount, totaling less than $10,000, was used up in living expenses and to pay legal defense fees (while Patrick was still a minor, he was charged in a murder case).

¶ 7        As guardian, Willie rented out the first property. Willie claimed the property never turned a profit and all rental income went toward the mortgage and expenses. (The property was sold after this case began, netting a profit of about $10,000, which Willie claims was given to Patrick's heir due to Patrick's death on May 15, 2004.)

¶ 8        Patrick alleged that Willie used $20,000 from the estate to purchase an income property located in Phoenix, Illinois (second property). The second property was purchased in Willie's name and is rental property. Willie denied estate funds were used to purchase the property.

¶ 9        Patrick moved into the second property on November 15, 2003, and paid rent to Willie. Patrick claimed Willie threatened to evict him from the second property if he did not keep current on his rental payments. (On January 7, 2011, a foreclosure lien was filed regarding the second property.)

¶ 10       Willie never charged Patrick's estate administration fees. He contends he used personal funds to pay the mortgage on the first property and for food, clothing, and everyday expenses for Patrick.

¶ 11       Willie admitted he never filed an accounting as guardian of Patrick's estate, claiming he was unaware this duty existed. When Patrick turned 21 years old, Willie sought a court order to have the guardianship terminated. The record shows that at that time, Patrick never expressed dissatisfaction with Willie's administration of his estate. On June 7, 1999, the Will County probate court entered an order terminating Willie's guardianship of Patrick's estate. Both Willie and Patrick were present in court. The legal process involving the estate of Patrick Rucker was filed, opened, administered, and closed in the Twelfth Judicial Circuit, Will County, Illinois.

¶ 12       In February 2004, Patrick filed a complaint in Cook County against Willie alleging conversion, negligence, breach of fiduciary duty, and equitable accounting. Patrick claimed Willie breached his fiduciary duty as guardian of his estate by failing to provide an accounting from 1993 through 1999 and by willfully using and retaining monies from the estate. Patrick claimed Willie retained all rents and profits from the first property and failed to properly transfer the property to Patrick when he reached majority. He further claimed that Willie used money from Patrick's estate for his own gain, specifically the purchase of the second property and the rents derived from it.

¶ 13       Willie filed a motion to dismiss on July 23, 2004. (After Patrick died, the original complaint was amended to substitute the plaintiff to Jean Adams, the court-appointed guardian of the estate of Elijah Ragland-Rucker, Patrick's son and sole heir. Elijah was born to Shenine Ragland, an unmarried woman, on October 4, 2000. Three years later, Patrick signed a voluntary acknowledgment of paternity, which was filed with the Department of Healthcare and Family Services.) The amended complaint sought an accounting of the estate, imposition of a constructive trust, punitive damages, and attorney fees and costs. The court denied Willie's motion to dismiss and Willie filed a second motion to dismiss, which the court also denied.

¶ 14    In denying Willie's motions to dismiss, the court found that when the guardianship terminated, Patrick was entitled to receive the estate in full, which included all estate property, as well as profits, if any, the estate generated. The court found plaintiff alleged sufficient facts to sustain the claims against Willie because Willie failed to turn over possession or ownership of the estate property to Patrick or the estate's profits when the guardianship terminated.

¶ 15    On September 6, 2011, Willie filed a motion for summary judgment arguing jurisdictional issues and improper venue. Willie also contended plaintiff could not establish conversion, negligence, or breach of fiduciary duty in his handling of Patrick's estate. Willie attached an affidavit to his motion, attesting he spent a considerable amount of his own money on Patrick's care and support and never sought reimbursement from Patrick's estate. Willie claimed he did not use $20,000 of Patrick's death benefit proceeds to purchase real estate in Phoenix, Illinois, or any other asset belonging to Patrick or his estate for his own benefit. Willie detailed the expenses paid out of Patrick's estate. Willie claimed he paid $3,500 toward funeral and burial expenses for Anna Rucker. In connection with the Will County probate estate, Willie claimed he paid $150 in court filing expenses and $1,800 in surety bond ($300 a year for six years). Regarding the first property, Willie claimed he attempted to rent the house to offset the cost of its mortgage and expenses and to preserve the asset. He claimed he collected $38,500 in rental payments while paying the following expenses: (i) $90,300 in mortgage payments; (ii) $11,100 in utility payments; (iii) $2,200 for the repair of water pipes; (iv) $1,800 for the recarpeting of the entire house after water damage; (v) $3,200 for drywall and painting of the entire house because of water damage; and (vi) an unspecified sum in maintenance and repair of the property. Willie alleged that all of the expenses related to the broken water pipes and water damage were paid after Patrick reached 18 and had been given $20,000 of the death benefit proceeds. Willie further claimed he paid $5,500 in educational costs for 1993 through 1994 and $11,000 in attorney fees in early 1996 when Patrick was charged in connection with a criminal case in Cook County. Willie attached affidavits from his mother and Patrick's grandmother, Shirley Rucker, and Willie's sisters, Bobbie L. Rhone and Linda Rucker-Gatson, supporting his position that he committed no wrongdoing in administering Patrick's estate and used all of the estate money for Patrick's care and support.

¶ 16    After briefing and argument, the trial court denied defendant's motion for summary judgment. The court found Willie waived his right to object to venue by failing to file a motion to transfer. The court further found genuine issues of material fact existed as to his alleged breach of fiduciary duty because Willie did not address the allegation that he used rental proceeds from the first property for his own benefit or comingled estate funds with his own. Willie also did not contest Patrick's allegation that he failed to turn over estate property to Patrick on the termination of the guardianship. The court found it significant that despite claiming he did not use estate funds to purchase the second property, Willie did not offer any evidence to support his claim. The court found that Willie's affidavit specifically accounted for only $36,450 of the $50,000 in cash funds that Willie acknowledged were part of Patrick's estate and the disbursal of the remaining sum "leaves open an important question."

¶ 17    In rejecting Willie's argument that he was entitled to summary judgment because the action for accounting should have been filed in Will County, the court held it had jurisdiction to hear the case. The trial court noted that this case came four years after the dismissal of the Will County probate case and involved factual and legal issues "entirely distinct" from those in the Will County case.

¶ 18    Regarding the negligence claim, the court identified "significant questions" that precluded summary judgment. Specifically, whether Willie breached his fiduciary duties to Patrick, whether he used rental proceeds from the first property for his own benefit, whether he comingled estate funds with his own, and whether Willie's expenditure of Patrick's estate funds was proper. Regarding the conversion claim, the court found questions of material fact concerning whether Elijah had a right to the first and second property, whether Willie had authority to assume control or ownership over either of those properties, and whether Willie misappropriated funds from Patrick's estate.

¶ 19                                          Trial

¶ 20    Jean Adams, the special administrator appointed by the court as guardian of Elijah's estate, testified as follows: The known assets of Patrick's estate consisted of $50,000 in insurance proceeds and the first property. Based on Patrick's original complaint and conversations she had with his attorney, the second property was also part of Patrick's estate. She acknowledged that Patrick was present in court when Willie's guardianship was terminated and did not express any dissatisfaction. Adams opined that Willie breached his fiduciary duty to Patrick (and, thus, Elijah) by failing to file an accounting with the court and failing to transfer the properties to him when he reached majority.

¶ 21    The evidence at trial established that Willie graduated from Marquette University School of Dentistry in 1985, has been on the Dental Advisory Board at Marquette since 1989, and is a 16-year member of the board of trustees at Augustana College. Willie endowed a $50,000 Rucker Family Scholarship at Augustana.

¶ 22    At trial, Willie testified that after Anna died, Patrick lived with Shirley at a property owned by Willie. Before Anna's death, Shirley paid Willie monthly rent equivalent to the mortgage payment. After Anna's death, Shirley stopped paying him rent. Willie testified he took Patrick on trips after Anna died and provided Shirley money so she could take him on trips, too. Willie's brother, a former NFL player, and Willie took Patrick on trips to Arizona to watch professional football games. Willie testified he tried to provide Patrick with a good life.

¶ 23    Willie presented no documentation of the expenses he paid out of Patrick's estate. He testified that when he received the $50,000 insurance proceeds in 1994, he placed the proceeds in Patrick's name in an account at Bank Calumet. Willie testified he did not have an account at Bank Calumet and never transferred money from Patrick's account to his own. Shirley testified that whenever she needed anything for Patrick, she asked Willie and he provided her the funds. Willie wrote checks to her which she deposited into her own account at Bank Calumet.

¶ 24    The court found it significant that Willie gave two "divergent" explanations of his expenditures from the insurance proceeds he deposited into Patrick's bank account. During adverse examination, Willie testified he withdrew $20,000 from Patrick's account in November 1994. Of the $20,000, he used (i) $5,500 for one year of tuition at Marian Catholic High School; (ii) $6,200 to pay for Anna's funeral expenses; and (iii) $8,200 to reimburse Shirley for Patrick's expenses. Willie never received any invoices or receipts for expenses Shirley paid on behalf of Patrick. During the presentation of his case-in-chief, Willie testified that when he took out $20,000 from Patrick's account, he reimbursed himself the $6,200 he had paid for Anna's funeral expenses and gave the balance to Shirley for Patrick's living expenses. He testified he had no set formula for how he reimbursed Shirley. Willie withdrew $13,000 from Patrick's account in December 1995. He testified he was unsure what he did with

those funds. He speculated that he used them to pay for private school tuition and that he gave the balance to Shirley for living expenses; however, he acknowledged that he had just given Shirley a substantial amount a month or two before. Willie further acknowledged that in February 1995, he withdrew $6,000 from Patrick's estate in two $3,000 increments. Again, he could not recall what he did with the funds.

¶ 25    Willie testified that when Patrick turned 18, he gave him $20,000, even though the balance of Patrick's account at that time was only $11,266.32. Willie testified he may have given Patrick $20,000 from his own money.

¶ 26    The court also found it significant that Willie gave conflicting testimony about the money he expended to hire an attorney to defend Patrick against criminal charges. At one point, Willie testified he expended $25,000 from his personal funds for Patrick's defense. He also testified that his brother, Keith, contributed $5,000; Shirley and his sister contributed $5,000; he contributed $12,000 from his own personal funds and some of the legal expenses were paid out of Patrick's estate.

¶ 27    Concerning the first property, Willie testified the expenses exceeded the rental income of $38,000. He acknowledged, however, that he never deposited the rental income into Patrick's account. The property was never made a part of Patrick's estate; instead, it was sold by Shirley in 2006 with an administrator's deed. Shirley testified that of the $11,600 in net proceeds from the sale, she put $10,000 in trust for Elijah's benefit and kept $1,600 as reimbursement.

¶ 28    Evidence was presented regarding certain cars. When Anna died, she left a Chevrolet Corsica in her estate. Shirley totaled the car in an accident. Willie testified he did not lodge a claim for insurance reimbursement on behalf of Patrick when the car was totaled. He testified he gave Shirley money to purchase two cars for Patrick. Shirley testified each car cost approximately $3,000. Patrick totaled the first car and the second car was abandoned as undriveable.

¶ 29    Regarding the second property, Willie testified he is a real estate investor and purchased the property using his own funds, withdrawn from Pinnacle Bank. As proof, he offered a cashier's check dated February 9, 1995, issued by Pinnacle Bank for the amount $11,749.89. He testified the check was for a down payment on the second property. Willie acknowledged that he promised Patrick he would turn over the second property to him if Patrick could prove to be mature enough to care for and manage it. Willie testified that never happened. Based on this evidence, the court held there was insufficient evidence to substantiate plaintiff's claim that the second property was part of Patrick's estate. In doing so, the court acknowledged that $13,000 was withdrawn from Patrick's estate the month before Willie purchased the second property. The court found, however, that that fact alone could not substantiate plaintiff's claim that the second property was part of his estate.

¶ 30    Elijah's mother testified that she told Adams the Rucker family was taking good care of Elijah and she did not want to be part of the litigation.

¶ 31    Finding in favor of plaintiff after careful consideration, the court held Willie failed to meet his burden to show he fulfilled his fiduciary duty to preserve and protect Patrick's estate. The court found it significant that Willie failed to file an accounting, did not terminate the guardianship relationship until Patrick turned 21, had "no idea how he expended Patrick's assets," and failed to "marshal Anna's residence into Patrick's estate." The court found Willie's testimony that he cared for Patrick and expended his own money on Patrick's behalf credible. And, although Willie's actions were "laudatory," the trial court held those actions

were "voluntary gifts to Patrick" and not proof that Willie fulfilled his fiduciary duties as guardian of Patrick's estate. The court held that Elijah, as Patrick's heir, "is entitled to inherit and enjoy Patrick's estate, which should have been preserved and vouchsafed by Willie."

¶ 32　Addressing the specific balance of Patrick's estate, the court acknowledged that Patrick admitted he received $20,000 out of the estate. The court also gave credence to Willie's testimony that he used estate funds to pay $5,500 for Patrick's private school tuition and $6,200 for Anna's funeral expenses, despite there being no documentary evidence to support these expenditures. The court, however, found that the remaining $18,300 of the insurance proceeds in Patrick's estate was mismanaged. Willie provided conflicting testimony as to how it was expended and he kept no records regarding how it was managed. The court further found Willie improperly failed to bring a claim for Anna's vehicle or to demonstrate how he maximized the rental income of the first property. Although no evidence was offered to show the value of these assets, the court took them into consideration in making its equitable determination because Patrick, as Anna's sole heir, was entitled to have the value of those assets in his estate.

¶ 33　The court found Willie negligent in his management of Patrick's estate and found that he breached his fiduciary duties as guardian causing Patrick damages. The court entered judgment of $20,000 in favor of plaintiff and against Willie Rucker.

¶ 34　　　　　　　　　　　　　　　ANALYSIS

¶ 35　Willie claims the court erred in finding him guilty of negligence and breach of fiduciary duty because the plaintiff failed to establish Patrick suffered any damages from Willie's alleged misconduct. Plaintiff argues that as a result of Willie's breach, Elijah as Patrick's heir does not have an accurate accounting of his inheritance.

¶ 36　　　　　　　　　　　　Motion for a Directed Finding

¶ 37　Willie argues the court erred in denying his motion for a directed finding at the close of plaintiff's case-in-chief.

¶ 38　We review an order disposing of a motion for a directed finding *de novo. Evans v. Shannon*, 201 Ill. 2d 424, 427 (2002). A trial court should grant a motion for a directed finding if all of the evidence overwhelmingly favors the movant such that no contrary verdict based on the evidence could ever stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). On review, all of the evidence must be construed in the light most favorable to the nonmoving party. *Id*.

¶ 39　To prove a claim for negligence, a plaintiff must show the defendant owed a duty to the plaintiff, breached that duty, and that the breach caused the plaintiff's injury. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000). We review *de novo*, as a question of law, whether a duty exists. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). Because breach of duty and causation constitute findings of fact, we will overturn the trial court's findings only if they are against the manifest weight of the evidence. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 151-52 (2005). Should the trial court's conclusion not be based on the evidence but be wholly arbitrary and unreasonable, that finding is against the manifest weight of the evidence and will be reversed on appeal. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 40 The parties do not dispute that by virtue of the guardianship relationship, Willie had a fiduciary duty to safeguard Patrick's financial assets during his minority.

¶ 41 Plaintiff argues Willie offered no evidence that his transactions on behalf of Patrick were fair and equitable in line with his duties as guardian. Willie responds that had he filed a final accounting–the nature of his breach–the accounting would have showed that the entire estate left to Patrick, and then some, was spent on Patrick's care. Willie contends the damages award of $20,000 is not supported by the record. He argues it is speculative and places great weight on the fact that the trial court did not specifically state the formula it used to determine the award nor identify specific losses the estate suffered as a result of Willie's administration.

¶ 42 Willie admits a fiduciary relationship existed between him and his nephew and that he opened himself up to a negligence claim by not filing an accounting. He argues, however, that he did not steal or personally profit from Patrick's estate and, therefore, never caused Patrick any damages. Willie argues that at the close of its case-in-chief, plaintiff had not met his burden of production regarding one of the elements–damages–and, therefore, because all of the elements of plaintiff's claims could not be proven, Willie's motion for a directed finding should have been granted.

¶ 43 Willie contends his only failing was not keeping adequate records of how he used the estate money and not filing an accounting. Willie's testimony is uncontroverted that all of the money spent from the estate was for Patrick's care and benefit. Willie argues the plaintiff bears the burden of producing evidence to substantiate the damages and nothing in the record shows he enriched himself at the expense of Patrick's estate for $20,000. According to Willie, the uncontroverted evidence shows that all of the money from Patrick's estate was spent on Patrick.

¶ 44 Plaintiff lists several large withdrawals as proof of Willie's misconduct, as well as Willie's failure to transfer the estate property and profits derived from it to him when the guardianship terminated.

¶ 45 The trial court diligently considered Willie's motion for a directed finding and found plaintiff offered enough evidence, when viewed in a light most favorable to him. The evidence showed Willie made various withdrawals from Patrick's estate and distributed the money to different individuals, including himself, for undocumented expenses and reimbursement. Funds Willie spent on Patrick's criminal defense, education, and trips were unaccounted for and spent without court approval. When Willie terminated his guardianship, he provided no accounting. He took no steps to transfer the real property in the estate to Patrick when Patrick reached majority or turn over rental income generated by the property.

¶ 46 The trial court's denial of defendant's motion for a directed finding is sufficiently supported by the record and, hence, proper.

¶ 47 Motion for Summary Judgment

¶ 48 Willie argues his motion for summary judgment should have been granted because plaintiff failed to produce or identify any evidence that supported the allegations of wrongdoing and, therefore, there are no genuine issues of material fact in dispute. Willie further contends there is no evidence Patrick suffered losses or incurred expenses as a result of Willie's alleged wrongdoing.

¶ 49   Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2010). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment aids in the expeditious disposition of a lawsuit, but it is a drastic measure that should be allowed only "when the right of the moving party is clear and free from doubt." *Id.* If the plaintiff fails to establish any element of his or her claim, summary judgment is appropriate. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The nonmoving party, however, need not prove his or her case at this preliminary stage but must present some factual basis that would support his or her claim. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). We review the trial court's decision to grant summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 50   The record supports the trial court's conclusion that plaintiff's claims for breach of fiduciary duty and negligence presented genuine issues of material fact sufficient to deny Willie's motion for summary judgment.

¶ 51   Concerning the breach of fiduciary duty claim, plaintiff contended Willie's failure to file an accounting and his failure to transfer the real estate when Patrick reached majority were the most serious breaches. The trial court found Willie's affidavits, accepted as true, were insufficient to defeat plaintiff's claims. Willie did not address the allegation that he used rental proceeds from the first property for his own benefit or that he comingled estate funds with his own personal funds. He did not contest that he failed to transfer the first property to Patrick when the guardianship terminated. Additionally, Willie's affidavit only accounted for $36,450 of the $50,000 in Patrick's estate, leaving "open an important question regarding the disbursal of the remaining sum."

¶ 52   Regarding the negligence claim, the court recounted several issues of material fact, including: whether Willie breached his fiduciary duties, whether he used the rental proceeds for his own benefit, whether he used estate money to purchase the second property, whether he comingled funds, whether he properly turned over the first property to Patrick, and whether his claimed expenditures on behalf of Patrick were proper.

¶ 53   Construing the allegations in the complaint in the light most favorable to plaintiff, we find the plaintiff stated valid claims. The trial court properly denied Willie's motion for summary judgment.

¶ 54                                                           Damages

¶ 55   The relationship between a guardian and a ward is equivalent to that of a trustee and a beneficiary. *In re Estate of Swiecicki*, 106 Ill. 2d 111, 117-18 (1985). Accordingly, as guardian, Willie had a duty to manage Patrick's estate "with the same degree of vigilance, diligence and prudence as a reasonable person would use in managing his own property." *Parsons v. Estate of Wambaugh*, 110 Ill. App. 3d 374, 377 (1982). Once a breach of trust is established, the trustee is liable for: (i) loss or depreciation in value of the trust; (ii) profit made by him through the breach of trust; or (iii) profit which would have accrued to the trust absent the breach of trust. *In re Estate of Halas*, 209 Ill. App. 3d 333, 349 (1991). The claimant carries the burden of proving damages to a reasonable degree of certainty. *Id*. Evidence of damages cannot be remote, speculative, or uncertain. *Id*. As a reviewing court, we cannot reverse the trial court's

determination of damages unless that determination is against the manifest weight of the evidence. *Id*.

¶ 56     We disagree with defendant's suggestion that the trial court's findings as to damages are speculative, arbitrary, or unreasonable. Plaintiff provided an adequate basis on which the trial court could calculate damages with reasonable certainty. There is no dispute that Patrick's estate included $50,000 in insurance proceeds and that Patrick was given $20,000 when he turned 18. Concerning the remaining balance, the court accepted Willie's testimony that he used estate funds to pay $5,500 for Patrick's school tuition and $6,200 for Anna's funeral expenses, despite no documentary evidence supporting these expenditures. And Willie offered no documentary evidence of how the remaining $18,300 of the insurance proceeds in Patrick's estate was managed. He could not recall with specificity the nature of the expenses related to Patrick's care or how the estate assets were used. In addition to the insurance proceeds, the trial court found Willie did not properly safeguard the value of the automobiles in the estate. The court believed Willie's testimony that he used his own assets to supplement those of Patrick's estate to provide for Patrick's care, but decided Willie's actions did not relieve him of his fiduciary duties in administering Patrick's estate, specifically, accounting for and safeguarding estate assets. We find the trial court's ruling on Willie's liability for damages is not contrary to the law or the weight of the evidence. The court's award of $20,000 is supported by the evidence and, as such, must be upheld.

¶ 57                                   Additional Arguments

¶ 58     Additionally, Willie argues that because the allegations of negligence and breach of fiduciary duty involved acts that occurred during Patrick's minority, the action should have been filed in Will County, where the legal process involving Patrick's estate was filed, administered, and closed. Patrick resided in Will County throughout the time of his minority and the first property is situated in Will County. Willie contends there was no valid reason for Patrick to file in Cook County and, therefore, it amounted to improper forum shopping.

¶ 59     Willie raised his objections to venue and *laches* in his motion for summary judgment, which the court denied. Willie contends that allowing this matter to proceed in Cook County, over 10 years after the events complained of allegedly occurred was in effect allowing Cook County to act as an appellate court over the Will County court proceedings. The Will County court found no negligence or breach of fiduciary duty by Willie in the performance of his duties as guardian of Patrick's estate. Willie argues that any objection to his administration of Patrick's estate should have been made in Will County and, therefore, the proceedings in Cook County were tainted and unfair.

¶ 60     The trial court properly considered, and rejected, defendant's argument. We agree. As the trial court made clear, a challenge to the court's jurisdiction should have been brought in a separate motion, not in Willie's motion for summary judgment. Additionally, the court considered, and denied, Willie's motion to dismiss brought under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). During the adjudication of his motion to dismiss, Willie never argued the court lacked jurisdiction.

¶ 61     Moreover, the court properly found it had jurisdiction to hear the case. The trial court held it was not acting as a "reviewing Court of a Will County proceeding," because this case was filed over four years after the dismissal of the Will County probate case and involved factual claims and legal arguments that were "entirely distinct" from the subject matter of the Will

County probate case.

¶ 62                                CONCLUSION

¶ 63       The trial court properly denied defendant's motion for a directed finding and later motion for summary judgment finding sufficient evidence was presented supporting plaintiff's claims. Following a bench trial, the court properly held defendant acted negligently and breached his fiduciary duties as guardian of his nephew's estate. Plaintiff suffered damages as result of defendant's conduct. We uphold the trial court's award of $20,000 in favor of plaintiff finding it is properly based on facts in the record.

¶ 64       Affirmed.