189 Ill. App.3d 920 (1989)
545 N.E.2d 816
In re ESTATE OF HAZEL M. MOORE, A Disabled Person (William Moore, Appellant,
v.
Jacqueline May Gulbrandsen, Appellee).
No. 2-88-1192.
Illinois Appellate Court  Second District.
Opinion filed October 18, 1989.
Rehearing denied November 17, 1989.
Paul G. Brinkman, of Wheaton, for appellant.
Edward T. Graham, of Wheaton, for appellee.
Order affirmed.
*921 JUSTICE WOODWARD delivered the opinion of the court:
William Moore (William) appeals from the order of August 9, 1988, which discharged Jacqueline May Gulbrandsen (Jacqueline) as plenary guardian of the estate of Hazel Moore, a disabled person; the August 9, 1988, approval of Jacqueline's final account; and the order of November 3, 1988, which denied William's motion to vacate the August 9, 1988, orders. At issue is whether Jacqueline's final report was sufficient to fulfill her duty to account for her administration of the estate.
This matter arises from the estate of Hazel M. Moore. On October 8, 1985, Jacqueline, Hazel's daughter, filed a petition to appoint herself as guardian of her mother's person and estate. The petition listed the approximate value of the estate as $30,000 in personal property, $80,000 in real property, and anticipated gross annual income of $11,000. The petition was granted on November 1, 1985. On December 31, 1987, Hazel died. Jacqueline was appointed executor of the decedent's estate in a separate proceeding. Said appointment has no bearing on this appeal, which only addresses the plenary guardian's final account.
No inventory or annual report was ever filed by Jacqueline, who presented her final account to the court on August 9, 1988. The final account is a five-page document, which lists receipts and disbursements for four bank accounts, one with Gary-Wheaton Bank and three with Du Page Trust Bank. A recapitulation is shown for each account. The first account shows total deposits of $65,447.97 and total disbursements of $63,688.99, for an ending balance of $1,758.98. The second account shows a total of $2,121.51 deposits and disbursements with a zero final balance. The third shows $19,702.33 receipts and disbursements with a zero final balance. The fourth account shows deposits of $26,932.79 and disbursements of $24,502.23, for an ending balance of $2,430.56. The transfers between the accounts are included as deposits and disbursements. There is a figure of total remaining cash from all deposits of $4,189.54, which equals the sum of the ending balance in the first and fourth bank accounts. Also, various shares of stocks in Commonwealth Edison Company, AT & T, and the Baby Bells were listed in the final account as assets of the estate.
William, son of Hazel Moore and Jacqueline's brother, appeared through his counsel. He informed the court that he had just received the report the day before and needed time to review it before the final orders could be entered. In response, Jacqueline's attorney suggested: "May I ask the Court to enter the Order and grant Counsel leave to come in and vacate it if he finds something about the Final *922 Report rather than coming back to the court twice?" William's counsel agreed to this procedure; the court approved the report and discharged Jacqueline of her duties.
Thirty days later, William filed a motion to vacate the August 9, 1988, orders on the ground that the receipts and records supporting the statement had not been made available for review. At the time of the hearing on this motion, he acknowledged that various records had since been made available but that the report was still in such poor form that he could not possibly determine whether the account was correct. The court denied the motion, and this appeal followed.
William argues that Jacqueline owed a duty of complete disclosure and accounting, which was not met by her final accounting as plenary guardian of Hazel's estate. He points out that when there is an objection to the plenary guardian's final report, said guardian has the burden of proving that the final report properly accounts for the ward's estate. (In re Estate of Murphy (1987), 162 Ill. App.3d 222.) Specifically, William maintains that the final account fails to give a beginning point, to explain what has happened to the assets, and to explain a proper ending balance. We disagree.
The Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 1-1 et seq.) imposes various duties on the representative of an estate. The representative must file an inventory of all estate property within 60 days after her appointment by issuance of letters. (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 14-1.) The representative of a ward's estate must also file a verified account within 30 days after the anniversary of her appointment and within 30 days of the termination of her office. (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 24-11.) The account must state the receipts and disbursements of the representative since her last accounting and all personal estate which is on hand and must be accompanied by such evidence of the disbursements as the court may require. The court may require the representative to produce satisfactory evidence to support the accounting. Ill. Rev. Stat. 1987, ch. 110 1/2, par. 24-11(a).
 1 The Probate Act of 1975 does not designate a particular form for an accounting, but simply requires a statement of all receipts and disbursements. (In re Estate of Thomson (1986), 139 Ill. App.3d 930, 936.) However, this flexibility does not give carte blanche for the representative to submit any format whatsoever. Where the descriptions of the transactions in a report are insufficient to support any conclusion respecting their necessity or reasonableness, the representative has failed to discharge her duty adequately. (In re Estate of Roth (1974), 24 Ill. App.3d 412, 417.) It is the burden of the representative *923 to prove that the items entered on the account are just and proper if objections to the report are filed. Roth, 24 Ill. App.3d at 416.
 2 As we note above, there is no statutorily defined method to prepare a plenary guardian's final account. As to his assertion that the account fails to state a beginning point, such information is found on page one, wherein it is stated that an account was opened at Gary-Wheaton Bank on November 1, 1985, with an opening balance of $9,220.15. Said account subsequently received funds transferred from a closed savings account (valued at $633.29) and a closed money market account (valued at $16,849.96) on November 19, 1985, giving the Gary-Wheaton Bank account a total of $26,703.40 as of that date. This total, sufficiently explained in the final account, gives the account an adequate description of the opening balance.
We do not need to go into a detailed description of what happened to Hazel's assets. The account adequately details receipts and disbursements which, due to Hazel's disabled condition, were straightforward, e.g., most disbursements were to the nursing home where Hazel stayed in her final years. Admittedly, the fact that Jacqueline opened four separate accounts and transferred funds between said accounts makes it somewhat difficult to follow the pattern of receipts and disbursements, but a closer review demonstrates that the final account sufficiently explains what happened to Hazel's assets.
Finally, the ending balance as stated in the final account appears to be correct. We find that the trial court did not err in approving Jacqueline's final report, in which she met her burden of proving that the final report properly accounts for her ward's estate.
 3 William raises other objections for the first time on appeal, most notably, that there is a sizeable and significant discrepancy between the assets and income on her original guardianship petition and the disbursements paid to outside entities as disclosed on her final accounting. These objections were not raised at the hearing below and are, therefore, waived. Shell Oil Co. v. Department of Revenue (1983), 95 Ill.2d 541.
Finally, William argues that the trial court abused its discretion in not vacating the order approving Jacqueline's final report because of her assurances that the order would be vacated upon request. In support of this argument, William points to a passage from the August 9, 1988, hearing in which the following exchange occurred.
"MR. GRAHAM [Jacqueline's attorney]: May I ask the Court to enter the Order and grant Counsel leave to come in and vacate it if he finds something about the Final Report rather than coming back to court twice?

*924 THE COURT: All Right?
MR. BRINKMAN: Fine.
THE COURT: All right."
William argues that Jacqueline was barred by the doctrine of equitable estoppel from objecting to what he terms the agreement to vacate final accounting.
 4 This argument is belied by the record. Jacqueline asserts, and William does not dispute, that following the August 9 hearing, he was given full access to all the documentation upon which she based her final report. William had sufficient opportunity to come forward with objections to any of Jacqueline's alleged accounting deficiencies at the subsequent hearing. As stated above, William failed to make specific objections which would cast significant doubt as to the final account's propriety, and the court properly denied his motion to vacate its order approving Jacqueline's final accounting. Under these circumstances, Jacqueline's objection to William's motion to vacate the order of August 9, 1988, was proper and not barred by equitable estoppel.
For the reasons stated above, we affirm the judgment of the circuit court.
Affirmed.
UNVERZAGT, P.J., and DUNN, J., concur.